**Michael LEWANDOWSKI,**
**Petitioner–Appellee,**

v.

**Martin MAKEL, Warden, Michigan**
**Dunes Correctional Facility,**
**Respondent–Appellant.**

**No. 90–2387.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 13, 1991.
Decided Nov. 22, 1991.

James Sterling Lawrence (argued and briefed), Detroit, Mich., for petitioner-appellee.

Becky M. Lamiman, Asst. Atty. Gen. (argued and briefed), Office of the Atty. Gen., Habeas Div., Lansing, Mich., for respondent-appellant.

Before KEITH and MARTIN, Circuit Judges, and KRUPANSKY, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Michael Lewandowski filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the validity of his state court conviction. In this petition, which is not his first, Lewandowski claims that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment. Pursuant to 28 U.S.C. § 636(b)(1)(B), the federal district court assigned this matter to a United States Magistrate to conduct an evidentiary hearing and to submit a report. In his report, the magistrate recommended that Lewandowski's petition for writ of habeas corpus be granted. Thereafter, the district court conducted a *de novo* review, including another evidentiary hearing, of those portions of the magistrate's report to which the State of Michigan objected. Following this review, the district court concluded that Lewandowski's petition should be granted, although for different reasons than those of the magistrate. On December 21, 1990, the district court ordered Lewandowski released from incarceration. The State of Michigan challenges the district court's decision, claiming that the court erred in its application of the two-prong test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and that there was an abuse of the writ of habeas corpus. We find otherwise and therefore affirm.

The relevant facts of this case, as found by the district court based upon its December 7, 1990 evidentiary hearing, were aptly summarized in the court's published decision, *Lewandowski v. Makel*, 754 F.Supp. 1142 (W.D.Mich.1990). For the sake of brevity, we will only recount those facts essential to the issues on appeal. Lewandowski was charged and convicted with the first degree murder of his wife, whom he shot and killed during a marital dispute in a Port Huron tavern on December 22, 1972. After he and his court-appointed counsel thoroughly reviewed the strengths and weaknesses of his case and his options, including the potential consequences, Lewandowski initially pled *nolo contendere* to second degree murder. Prior to sentencing, Lewandowski sent the trial judge a letter on June 12, 1973 expressing dissatisfaction with his court-appointed attorney and requesting to withdraw his plea. On June 18, 1973, the Michigan Supreme Court issued its opinion in *People v. McMiller*,

389 Mich. 425, 208 N.W.2d 451, 454, *cert. denied*, 414 U.S. 1080, 94 S.Ct. 599, 38 L.Ed.2d 486 (1973), which broadly stated, "that upon the acceptance of a plea of guilty, as a matter of policy, the state may not thereafter charge a higher offense arising out of the same transaction."

On July 30, 1973, Lewandowski appeared before the judge and sought to withdraw his plea and to substitute counsel. His court-appointed attorney learned of Lewandowski's desires either on the day of the hearing, or just a few days earlier. Lewandowski's attorney disagreed vehemently with his client's desire to withdraw the plea and, because of this, the judge gave the attorney permission to withdraw from the case. Except for a meeting with Lewandowski's new counsel, this was the last time court-appointed counsel was involved in this case.

At some point during this period, Lewandowski spoke to another attorney concerning his case. After the July 30, 1973 hearing, J. Thomas McGovern and James Andary appeared as retained counsel for Lewandowski and filed a motion to withdraw his plea. Apparently, Lewandowski originally consented to the *nolo contendere* plea because he could not remember the details from the night of the murder; he subsequently began to remember the circumstances surrounding the murder and wished to tell his story to a jury. On August 13, 1973, the court heard the motion to withdraw Lewandowski's plea. On August 27, 1973, the court denied the motion. The court sentenced Lewandowski to 15 to 25 years on the second degree murder charge. Both Lewandowski's first attorney and the prosecutor believed this to be a lenient but fair sentence.

At some point after the August 27 denial of Lewandowski's motion, McGovern advised Lewandowski about the Michigan Supreme Court's ruling in *McMiller*. McGovern told Lewandowski that, in light of *McMiller*, should Lewandowski succeed in withdrawing his plea to second degree murder, he could not then be tried on the original charge of first degree murder. McGovern could not recall exactly when he first became aware of *McMiller* nor when he first discussed this case with Lewandowski.

Significantly, in December of 1974, the Michigan Supreme Court, without citing *McMiller*, issued an order in another case totally unconnected with Lewandowski's, *People v. Matthews*, 231 N.W.2d 637 (1974) (per curiam). The *Matthews* decision, however, directly implicated *McMiller's* viability and applicability to Lewandowski's case. The order entered by the court in *Matthews* vacated the decision of the trial court denying a defendant's motion to withdraw his guilty plea and *remanded the case for further proceedings on the original charge* of armed robbery. In spite of *Matthews* negative implications, Lewandowski's new counsel appealed the denial of their client's motion to withdraw his plea to the Michigan Court of Appeals. On January 28, 1975, that court denied Lewandowski's appeal, quoting the following passage from *Matthews:*

> "This Court sua sponte, pursuant to GCR 1963, 865.1(7), reverses the decision of the Court of Appeals and vacates the decision of the trial court denying the withdraw of the guilty plea. The cause is remanded to Recorder's Court for the City of Detroit for further proceedings on the original charge of armed robbery consonant with *People v. Bencheck*, 360 Mich. 430, 104 N.W.2d 191 (1960), and *People v. Zaleski*, 375 Mich. 71, 133 N.W.2d 175 (1965)."

*People v. Lewandowski*, 60 Mich.App. 455, 231 N.W.2d 392 (1975) (quoting from *Matthews*, 231 N.W.2d at 637). Lewandowski's attorneys appealed this decision to the Michigan Supreme Court without discussing the legal ramifications of a successful appeal with Lewandowski. In fact, Lewandowski's attorneys had no contact with their client whatsoever between the time the Michigan Court of Appeals issued its opinion and the appeal on Lewandowski's behalf was made to the Michigan Supreme Court. The Michigan Supreme Court reversed the decision of the court of appeals and remanded the case for proceedings based on the first degree murder charge. *People v. Lewandowski*, 394 Mich. 529, 232

N.W.2d 173 (1975). Lewandowski filed a motion in the trial court to reduce the charge from first to second degree murder. This motion was denied.

Both the state prosecutor and Andary testified that on the day before the jury was to be chosen, the prosecutor offered a second plea bargain. While Lewandowski, his counsel, and the assistant prosecutor (who was to try the case) were sitting in the courtroom following last minute motion arguments, the prosecutor strode into the room and announced: "You can have second degree." Lewandowski personally rejected the offer. Neither of his counsel said anything. Lewandowski was subsequently convicted of first degree murder and received the mandatory sentence of life imprisonment without parole.

On habeas review, the federal district court determined that Lewandowski had established ineffective assistance of counsel under the two-prong test established by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Specifically, the court found that Lewandowski's counsel failed to inform him of significant aspects of the law regarding the risks of appeal and that this failure "fell below an objective standard of reasonableness." *Id.* at 687–88, 104 S.Ct. at 2064. Furthermore, the court found that Lewandowski had met his burden under the second prong of *Strickland* by showing a "reasonable probability" that counsel's conduct prejudiced the outcome. *Id.* at 694, 104 S.Ct. at 2068. The court explained:

> [T]here is, at least, a reasonable probability that had petitioner's counsel sought his authorization and properly informed him of the state of the law and the risks that he faced should his appeal be successful, the outcome would have been different. When clearly advised as to the risks involved with going to trial on charges of first degree murder, petitioner [would have] entered a plea at once.

*Lewandowski v. Makel*, 754 F.Supp. at 1149–50. The district court determined that the appropriate remedy was specific performance of the original plea agreement, including the sentence which the judge imposed under the agreement. Under the original sentence Lewandowski would have been eligible for parole on May 2, 1989, at the latest. Accordingly, the district court ordered Lewandowski released from custody and this appeal ensued.

On appeal, the State of Michigan argues that the district court erred in (1) concluding under *Strickland* that Lewandowski's attorneys' actions fell below objective standards of reasonable conduct; (2) finding that Lewandowski had met his burden of demonstrating actual prejudice; (3) releasing Lewandowski from custody instead of remanding him back to the state prosecutor; and, (4) failing to find that there was an abuse of the writ.

■ The State argues that Lewandowski's counsel's actions were reasonable at the time at which they occurred and only became unreasonable with the benefit of hindsight. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 ("fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight ... and to evaluate the conduct of counsel from counsel's perspective at the time [the subject conduct occurred]"). Specifically, the State argues that it was not unreasonable for Lewandowski's counsel to continue to believe that the *McMiller* rule would apply because neither the Michigan Supreme Court nor the Michigan Court of Appeals had ever indicated otherwise prior to Lewandowski's case. The State attempts to minimize the significance of the order which the Michigan Court of Appeals issued on rehearing Lewandowski's appeal, in which the court quoted from *Matthews*. The State argues that the order in Lewandowski's case neither cited *McMiller* nor discussed the scope of its applicability to Lewandowski; in fact, the State claims that it was the Michigan Supreme Court's decision in Lewandowski's appeal which conclusively determined that the *McMiller* rule did not apply where a defendant succeeded in withdrawing his plea on a claim of innocence.

The critical issue then is whether the Michigan Supreme Court's order in *Mat-*

*thews* and the Michigan Court of Appeals decision in Lewandowski's appeal on rehearing were sufficient to put Lewandowski's counsel on notice that the *McMiller* rule was inapplicable to the facts of his case. If there was sufficient notice, then counsel's failure to recognize *McMiller's* inapplicability was "outside the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, and Lewandowski was most assuredly denied effective assistance of counsel. If, however, it was reasonable for Lewandowski's attorneys to continue to believe that their client could only be charged with second-degree murder if his plea was withdrawn, then the failure to inform Lewandowski that he could face first degree murder charges if his appeal was successful did not constitute ineffective assistance of counsel. In short, Lewandowski's counsel would not be obligated to inform their client of risks of which they themselves could not have known.

Based upon the Michigan Supreme Court's broad language in *McMiller,* we believe, as did the district court, that it was reasonable for Lewandowski's attorneys to realize that the holding in *McMiller* was inapplicable to their case. We do not need to reach the question of whether the *Matthews* order, standing alone, was sufficient to put Lewandowski's counsel on notice of *McMiller's* inapplicability in light of the Michigan Court of Appeals' decision in Lewandowski's appeal on rehearing. In that opinion, the court of appeals quoted the entire *Matthews* order in which the Michigan Supreme Court permitted a defendant to withdraw his guilty plea and then remanded the case on the original charge of armed robbery. More importantly, the court of appeals went on to discuss the lower court record in *Matthews* and noted that Matthews had initially pled guilty to assault with intent to commit armed robbery.

We acknowledge that the court of appeals' decision denying Lewandowski's request for rehearing does not specifically mention *McMiller*. However, a cursory reading of that opinion, where a substantial portion was quoted from *Matthews,* reveals that Matthews, after successfully withdrawing his plea, was then charged with an offense greater than that to which he originally pled. We conclude then that the court of appeals' decision put Lewandowski's counsel on notice of the inapplicability of *McMiller*. Counsel's failure to recognize this change in the law prevented Lewandowski from being aware of the risks he faced if he was successful in his appeal and thus counsel's performance was "outside the wide range of professionally competent assistance." *Id.* 466 U.S. at 689, 104 S.Ct. at 2065.

The State argues that the district court erred in finding that Lewandowski had met his burden of demonstrating prejudice under *Strickland. See also Hill v. Lockhart,* 474 U.S. 52, 58–59, 106 S.Ct. 366, 370–71, 88 L.Ed.2d 203 (1985) (utilizing the same test for prejudice); *Turner v. Tennessee,* 858 F.2d 1201, 1206 (6th Cir.1988), *vacated on other grounds,* 492 U.S. 902, 109 S.Ct. 3208, 106 L.Ed.2d 559 (1989) (defendant must establish that there is a reasonable probability that, but for the incompetence of counsel, he would have accepted the plea). In effect, the State argues that Lewandowski cannot demonstrate prejudice because, after he was permitted to withdraw his plea, the State offered Lewandowski the opportunity to plead guilty to second-degree murder but Lewandowski refused this offer. The flaw in the State's argument is that the district court found, based upon the testimony it heard at the evidentiary hearing, that Lewandowski would not have appealed his case to the Michigan Supreme Court had he been informed of the risks in doing so. Thus, the relevant factual finding concerns what Lewandowski would have done at the time his appeal was denied by the court of appeals.

■ Undoubtedly, the fact that Lewandowski rejected the prosecutor's offer of second-degree murder does support, somewhat, the State's argument that Lewandowski would have appealed his case to the Michigan Supreme Court even if he was adequately apprised of the risks. However, the district court has concluded otherwise and we must respect that conclusion

unless we are left with the firm conviction that a mistake has been committed. *See Blackburn v. Foltz*, 828 F.2d 1177, 1181–82 (6th Cir.1987), *cert. denied*, 485 U.S. 970, 108 S.Ct. 1247, 99 L.Ed.2d 445 (1988). Deference to this factual finding is especially warranted because the critical evidence was testimonial. *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1744, 104 L.Ed.2d 181 (1989) (citing *United States v. Wolf*, 813 F.2d 970, 975 (9th Cir.1987)). The State, however, pointing to *Turner*, 858 F.2d at 1206, argues that this finding was clearly erroneous because it rests largely on the subjective and potentially self-serving testimony of Lewandowski. We disagree. To be sure, the district court did credit Lewandowski's testimony concerning what he would have done had he been properly advised of the risks of withdrawing his plea. However, in cases such as this where the question turns on the motivation of the defendant—that is, what would the defendant have done if supplied with accurate information—the amount of objective evidence will quite understandably be sparse. In this case, probably the strongest objective evidence supporting Lewandowski's testimony is that he did, in fact, enter the plea. This suggests that he was willing to forego his day in court, at least before he was told of the *McMiller* rule, in exchange for a less risky alternative. Therefore, we find that the district court properly concluded that Lewandowski demonstrated prejudice.

■ The State also argues that the district court erred in releasing Lewandowski. The State contends that the district court should have remanded the proceedings back to the county prosecutor. Presumably, the State would like the prosecutor to be able to either refile second-degree murder charges or negotiate a plea with no reference to the sentence Lewandowski received under his original plea. As *Turner* makes clear, "[r]emedies for the deprivation of the Sixth Amendment right to effective counsel 'should be tailored to the injury suffered from the constitutional violation....'" 858 F.2d at 1207 (quoting *United States v. Morrison*, 449 U.S. 361, 364,

101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981)). In this case, it is clear what injury Lewandowski suffered. Instead of being sentenced for 15 to 25 years of incarceration, he received a sentence of life imprisonment without parole. The only way to effectively repair the constitutional deprivation Lewandowski suffered is to restore him to the position in which he would have been had the deprivation not occurred; namely, serving a sentence for 15 to 25 years.

■ As a final matter we must decide whether the district court abused its discretion by not finding that Lewandowski's petition was an abuse of the writ. When this matter was before the magistrate, the State argued there was an abuse of the writ. The magistrate, however, did not directly address this issue when he made his findings recommending that Lewandowski's habeas petition be granted. Thereafter, the State objected on various grounds to the magistrate's findings but did not raise again the abuse of the writ issue to the district court. Thus, when the district court rendered its judgment, the abuse of the writ issue was not discussed by the court because it was not before it.

Lewandowski urges that the abuse of the writ issue was waived by the State when it failed to specify this matter in its objections to the magistrate's report. We agree. We further find that the State's general reliance on the Supreme Court's latest pronouncement on abuse of the writ issues, *McCleskey v. Zant*, 499 U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), is not dispositive. *McCleskey* is "inapplicable to the present case because the controversy before us [is] neither borne of the same circumstances nor [does] it satisfy the rationale underpinning" the Supreme Court's latest habeas analysis. *Turner v. State of Tennessee*, 940 F.2d 1000 (6th Cir.1991) (concluding that the Supreme Court's latest habeas analysis in *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), did not apply to the facts of *Turner*). In *McCleskey*, the Supreme Court found that the habeas petitioner, who had made a prior federal habeas claim, abused the writ with a later Massiah claim. The circumstances indicated that McCleskey

could have raised his Massiah claim much earlier. *McCleskey,* 111 S.Ct. at 1472–75. The *McCleskey* Court held that an abuse of the writ occurs where there is deliberate abandonment of a habeas claim or where there is inexcusable neglect, *id.* at 1467, and that in the latter situation, courts should review the matter under the standard used in making procedural default determinations. *Id.* at 1468.

■ We find that the district court did not abuse its discretion by failing to find Lewandowski abused the writ. Under the facts of this case and particularly in light of the State's failure to renew its abuse of the writ claim following the magistrate's findings, we find *McCleskey* inappropriate for our analysis. Even were *McCleskey* somehow applicable, the *McCleskey* Court emphasized that the cause and prejudice analysis, used in making procedural default determinations, would apply in abuse of the writ cases where inexcusable neglect is alleged. *Id.* Thus, because we have determined that Lewandowski received ineffective assistance of counsel, under *McCleskey's* cause and prejudice analysis, the district court did not abuse its discretion when it failed to find an abuse of the writ by Lewandowski.

Therefore, for the foregoing reasons, the judgment of the district court is affirmed.