**William Benjamin WARD,**
**Petitioner–Appellant,**

v.

**UNITED STATES of America,**
**Respondent–Appellee.**

No. 92–1277.

United States Court of Appeals,
Sixth Circuit.

Decided April 28, 1993.

William Benjamin Ward (briefed), pro se.

Donald A. Davis, Asst. U.S. Atty. (briefed), John A. Smietanka, U.S. Atty., Office of U.S. Atty., Grand Rapids, MI, for U.S.

Before: JONES and SILER, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

## AMENDED OPINION

CELEBREZZE, Senior Circuit Judge.

William Benjamin Ward appeals the denial of his 28 U.S.C. § 2255 petition to vacate sentence. Ward seeks to overturn his 1989 federal convictions of two counts of unlawfully manufacturing pipe bombs, one count of unlawfully possessing a pipe bomb and one count of destruction of government property via the use of explosives. The district court sentenced Ward to 65 months of imprisonment and three years of supervised release.

On direct appeal of his convictions, Ward raised four assignments of error challenging: 1) the district court's restriction of defense counsel's closing argument; 2) the sufficiency of the evidence sustaining his convictions; 3) the district court's restriction of extrinsic evidence concerning the credibility of government witnesses; and 4) the computation of defendant's sentence. A panel of this court found no merit to these claims and affirmed the judgment of the district court in *United States v. William B. Ward*, 911 F.2d 734 (6th Cir.1990) (Table).

In August 1991, Ward, *pro se*, filed a petition to vacate his sentence pursuant to 28 U.S.C. § 2255 alleging: 1) ineffective assistance of trial counsel; 2) the jury was prejudiced by exposure to inadmissible evidence; and 3) a government witness committed perjury. The district court denied Ward's petition for relief without a hearing.

Ward now appeals, *pro se*, the district court's disposition, arguing that he was denied effective assistance of counsel at trial and on direct appeal. Because Ward did not raise the issue of the effectiveness of his appellate counsel in his petition to the district court, we decline to consider it for the first time now, on appeal. *United States v. Hill*, 688 F.2d 18, 21–22 (6th Cir.1982), *cert. denied*, 459 U.S. 1074, 103 S.Ct. 498, 74 L.Ed.2d 638 (1982). Ward's claim of ineffective assistance of trial counsel, however, we find to be well taken.

Ward's most egregious example of ineffective assistance of counsel at trial occurred during defense counsel's cross examination of government witness Eugene Sturgeon, a friend of Ward. In the course of his examination of Sturgeon, defense counsel opened the door to the prosecution's introduction of otherwise inadmissible evidence of Ward's

character.[1] Transcript at 167–168. Defense counsel specifically cross-examined Sturgeon regarding defendant's propensity for making pipe bombs and using them to blow up mail boxes. Ironically, in the midst of his questions, government counsel objected and cautioned defense counsel not to open the door to prosecution evidence of defendant's propensity to create bombs. Transcript at 167–168. Instead of heeding the warning, defense counsel accused the prosecutor of attempting to intimidate him. The court halted the exchange in order to review the nature of defense counsel's objectionable question. The court strangely concluded that it would have sustained an objection if there had been one.[2] Defense counsel then concluded his question thusly: "... blowing up pipe bombs and making them, and destroying government property— ... [w]ould that be consistent with [defendant's] character?" Transcript at 167–168. The court designated the question a "character question" which opened the door to the government's presentation of evidence demonstrating defendant's propensity to engage in these activities. Transcript at 168, *et seq.*

Ward also cites other examples of ineffective assistance of counsel. Throughout the trial, defense counsel frequently appeared hostile to the prosecutor. On a number of occasions, defense counsel seemed to be confused as to whether he was battling the prosecutor personally or presenting the defendant's case. In a few instances, defense counsel actually argued his objections to the prosecutor instead of the court, even after being reminded by the court that evidentiary determinations are made by the court. Transcript at 369–380. Moreover, defense counsel's often incomprehensible and illogical statements, questions and arguments were magnified by the statements of the court and prosecutor, expressing their inability to understand what defense counsel was asking, doing or saying. Transcript at 305–306; 344–345; 370–371; 380–383; 427–428. Further, though the printed record of the trial cannot capture every sound or every facial expression exhibited in the courtroom, we note the district court's observation on the record of jurors snickering at defense counsel. Transcript at 427. Finally, in arguing in support of what the court considered to be a motion for a mistrial, defense counsel indicated he intentionally opened the door to the bad character evidence, acknowledged his hostility toward the prosecution, and conceded that his antagonism and ineffectiveness may have harmed his client sufficiently to require a mistrial. Transcript of proceedings, pp. 484; 485; 454–459.

The court, unable to decide whether defense counsel's conduct was ineffective enough to warrant a mistrial, presented the issue to the nineteen-year-old defendant and his father for resolution. After summarizing all the unusual aspects of defense counsel's behavior and explaining the proper role for court appointed counsel, the court asked the defendant and his father to consider whether defense counsel was "effective and helpful." Transcript at 432. The court emphasized what defendant and his father needed to ponder and repeatedly encouraged them to take as much time as necessary to think the decision through. The court also repeatedly explained that, should they find counsel ineffective, the court would declare a mistrial. Otherwise, the trial would proceed with the same attorney representing Ward.

When Ward and his father returned to court, the following exchange occurred:

THE COURT: Would you like to speak for your son? You are welcome to if he is—

MR. WARD, SR.: Can I?

DEFENDANT WARD: Yes.

MR. WARD, SR.: We have talked it over, and we think that because of the lack of our knowledge of any evidence, any witnesses, anything like that, that now that we have some idea, we can base our case

---

1. FED.R.EVID. 404(a) prohibits the admission of character evidence to prove "action in conformity therewith on a particular occasion."

2. The record reveals no explanation for the court's apparent determination that the prosecutor's express use of the term "objection" in his warning against defense counsel's elicitation of inadmissible character evidence did not constitute an evidentiary objection requiring sustenance.

on the knowledge that we have now, to present that to another attorney and come in here better prepared to defend the case.

THE COURT: Do you mean you don't think that [defense counsel] is prepared?

MR. WARD, SR.: He was not prepared, no, Sir.

THE COURT: Why do you think that he was not prepared?

MR. WARD, SR.: Everything that was presented to him or to the Court or to us, most of it came as a surprise.

THE COURT: That doesn't mean that he didn't prepare himself.

MR. WARD, SR.: He was prepared, but not with full knowledge of what kind of evidence and what kind of witnesses or which witnesses.

THE COURT: But you see, that would be true of any lawyer. That wouldn't make [defense counsel] different from any other lawyer. [Defense counsel] couldn't get what [the prosecutor] wouldn't get to him or what the Court wouldn't order to be given to him. It is not [defense counsel's] order.

MR. WARD, SR.: That is what we are trying to think, that maybe another attorney could be better aware of the case or situations.

THE COURT: Let me ask you this, Mr. Ward. How do you feel about [defense counsel's] representation? Notwithstanding the fact that he didn't get what he wanted, which is not his fault, how do you feel about the way that he has represented your son?

MR. WARD, SR.: [Defense counsel], I feel he has done to the best of his ability with what he had to work with.

THE COURT: How do you feel, young Mr. Ward?

DEFENDANT WARD: I feel he did to the best of his ability also.

THE COURT: Let me not put words in your mouths, both of you Mr. Wards. What I understand you to be saying to me is that you would like to have a mistrial because now you have more information about what the case is against young Mr.

Ward, and a new lawyer would be able to take advantage of that?

MR. WARD, SR.: Not really advantage.

THE COURT: Prepare for it?

MR. WARD, SR.: Better prepare for it.

DEFENDANT WARD: If they had all of this hard-core evidence, I don't think having a different lawyer would do any good anyways, but at least this way he will have the evidence that they have, except for the things that want to hide that maybe they have some markings or fingerprints. If they have markings or fingerprints, then having a new lawyer really won't make a big difference, but—

THE COURT: Will or won't? I didn't understand it.

DEFENDANT WARD: It will make a difference. I meant will. And I don't know.

Transcript at 452–454. After defense counsel interjected a convoluted argument in favor of a mistrial, the exchange between the court and the Wards continued:

THE COURT: Anything else, Messrs. Wards?

DEFENDANT WARD: I would like to say with regard to their investigation, I have a question. I am—

THE COURT: Excuse me. I only want it to relate to [defense counsel's] representation of you in the trial.

DEFENDANT WARD: I can't say anything in the trial?

THE COURT: That is not what I am interested in.

[DEFENSE COUNSEL]: He wants to know the work that I am doing.

MR. WARD, SR.: I think you have done a good job.

THE COURT: How about young Mr. Ward? The most important Mr. Ward here.

DEFENDANT WARD: I think he did a good job.

THE COURT: Anything you want to say about [defense counsel] and his representation, either one of you?

DEFENDANT WARD: I feel that anger, maybe hate between [defense counsel] and

[the prosecutor], maybe got in the way of a fair trial. Maybe that is what happened. I don't know.

Transcript at 460–461. Based upon the foregoing exchange, the trial court denied the motion for a mistrial.

The same judge who presided over Ward's trial also ruled upon Ward's 28 U.S.C. § 2255 petition for vacation of sentence. In its opinion denying Ward's 28 U.S.C. § 2255 petition, the district court discussed the exchanges set forth above. The court, however, in contravention to the plain meaning of the quoted passages, as well as in contrast to his own summation of the situation at trial[3], inexplicably concluded that the issue of ineffective assistance of trial counsel was never properly raised in the trial court. The court recollected that defense counsel moved the court for a mistrial only as a tactical ploy to gain additional discovery of the government's case. The court further stated that defendant was satisfied with his attorney's work and that defense counsel's decision to open the door to damaging character evidence against the defendant was a reasonable trial tactic, even if it proved not to be the "most efficacious way" to defend Ward. Joint Appendix at 37–39.

Contrary to the district court's conclusion that defendant and his father thought defense counsel did a good job, the record suggests they were prompted into this statement only after the court insisted they were dissatisfied with the result rather than the representation. Even after the court elicited approval of counsel's performance from defendant and his father, the father reiterated that his son did not receive a fair trial. Transcript at 461. In any case, whether or not defendant and his father were satisfied with the court appointed defense counsel is not at issue. The fundamental question is rather whether defendant's conviction should be vacated due to the ineffectiveness of his trial counsel.

■ To successfully vacate his sentence pursuant to 28 U.S.C. § 2255, Ward must demonstrate a fundamental defect in the proceedings which inherently results in a complete miscarriage of justice or an error so egregious it violates due process. *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir.1990). Ward asserts the ineffective assistance of his trial counsel as the fundamental defect which violated his due process rights.

To establish ineffective assistance of counsel, Ward must show that his counsel's performance was deficient[4] and that the deficient performance prejudiced his defense sufficiently to make it reasonably probable that it rendered the trial unfair and the result unreliable. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864; *Lewandowski v. Makel*, 949 F.2d 884, 887–888 (6th Cir.1991); *Stamps v. Rees*, 834 F.2d 1269, 1276 (6th Cir.1987), *cert. denied*, 485 U.S. 980, 108 S.Ct. 1279, 99 L.Ed.2d 489 (1988). The essential question is whether better lawyering would have produced a different result. *United States v. Sanchez*, 960 F.2d 610, 612 (6th Cir.1992). A reviewing court must give a highly deferential scrutiny to counsel's performance, making every effort to evaluate counsel's conduct from his or her perspective at the time the conduct occurred. *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. at 2065.

■ The Supreme Court in *Strickland* expressly contemplated judicial evaluation of counsel's performance in accordance with an objective standard of reasonableness as measured against the prevailing norms of the legal community. *Strickland v. Washington*, 466 U.S. at 688, 104 S.Ct. at 2064–65. It is

---

3. At trial, the court concluded that, based upon the statements of the defendant, his father and counsel, and after consideration of the feelings of the jury, the court was compelled to deny the motion for mistrial based on the ineffective assistance of counsel. Transcript at 486–488.

4. A deficient performance is one which falls below an objective standard of reasonableness.

This standard, which was ultimately adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864, was first set forth by a panel of this court in *Beasley v. United States*, 491 F.2d 687 (6th Cir.1974).

up to the district court, and not the parties or their families, to determine whether counsel's representation falls below an objective standard of reasonableness. *Warner v. United States*, 975 F.2d 1207, 1211 (6th Cir. 1992).

In the instant case, the district court passed its burden to evaluate counsel's performance onto the teenaged defendant and his father. The record discloses that the two, both laymen with no experience in the criminal justice system, were unsure whether defense counsel adequately represented the defendant, especially in light of the court's imposing explanation of what is adequate preparation for an attorney. While the record reveals the court viewed counsel's conduct deferentially, we find that the court erred when it failed to review counsel's performance in accordance with an objective standard of reasonableness.

In its opinion denying Ward's petition to vacate, the district court compounded the error in two respects: 1) the court denied that the issue of ineffective assistance of counsel was properly raised at trial in contravention to the written record; and 2) the court improperly found counsel performed effectively on the basis that the defendant and his father "... expressed satisfaction with the legal representation." Joint Appendix p. 37.

As we have previously noted, the district court addressed at length the ineffectiveness of counsel at trial in the context of a motion for mistrial. The trial transcript gives no indication that the court dismissed the issue as frivolous. *Cf. United States v. Cooper*, 868 F.2d 1505, 1510–1511 (6th Cir.1989), *cert. denied*, 490 U.S. 1094, 109 S.Ct. 2440, 104 L.Ed.2d 996. (The reviewing court declined to consider an ineffective assistance of counsel claim determined to be frivolous at trial).

Further, as we have discussed, the trial court erroneously transformed its burden to objectively evaluate counsel's effectiveness into the defendant's burden to determine his own satisfaction with his representation. Such an inquiry may be proper when considering a substitution of counsel, but certainly does not rise to the level of a "judicial evaluation" in accordance with an "objective standard of reasonableness," as mandated by the Supreme Court in *Strickland*. Thus, we hold the district court erred by failing to properly evaluate counsel's performance at trial.

■ We also find that defendant was, indeed, deprived of the effective assistance of trial counsel. As we have previously noted, our examination of the district court record revealed that the court observed jurors "snickering" at defense counsel and, on numerous occasions, the judge indicated he could not follow defense counsel's arguments. The court noted defense counsel's inappropriate hostility and paranoia, his confusion and his rambling and illogical comments on the record. Further, defense counsel not only opened the door to damaging character evidence against his client, but did so after the trial judge and government counsel intervened in an effort to stop him.

When defense counsel's performance is evaluated in the context of the exclusively circumstantial nature of the evidence against the defendant, it is highly probable that better lawyering would have produced a different result.[5] *United States v. Sanchez*, 960 F.2d at 612. The jurors' "snickering" and the inability of a trained lawyer and the judge to understand counsel's antics tend to show defense counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. at 2064. Defense counsel's demeanor and actions, while demonstrating a zealous defense of his client, deviated sufficiently from the norm to make it reasonably certain that the resultant convictions cannot be fairly relied upon. *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. at 2064.

The judgment of the district court is hereby VACATED, defendant's petition to vacate is GRANTED, and a new trial is ordered.

SILER, Circuit Judge, dissenting.

I respectfully dissent from the majority opinion, as I believe that the district judge

---

5. Our review of the record discloses that the government's case against defendant was based entirely upon circumstantial evidence of defendant's propensity to commit similar, as well as dissimilar, criminal acts and hearsay testimony linking the defendant to the crimes charged.

did everything he could to resolve the question of ineffective assistance of counsel at the most opportune time, that is, during the trial itself. Thus, I find no constitutional error here.

I agree with the majority opinion that the standards for ineffective assistance of counsel are set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, that case also stated:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 689, 104 S.Ct. at 2065 (citation omitted).

In this case, during a recess, defense counsel indicated that he was engaged in a trial tactic that he did not want to reveal to opposing counsel. He also indicated that he told the defendant in advance what he was going to do, which shows acquiescence on the part of the defendant.

During trial, as the majority opinion shows, the court presented the issue of ineffective assistance of counsel to the defendant and his father. Certainly, the defendant was only 19 years old, but he is an adult under the law. There is nothing in the record to show that he did not have as much intelligence or ability as any other defendant. In addition, the court consulted defendant's father. Both indicated in court that defense counsel had done a good job, and the only complaint that they had about their counsel was that he did not obtain enough discovery in advance of trial. However, as the court indicated, discovery is limited by the Federal Rules of Criminal Procedure.

Although defense counsel's tactics in questioning Sturgeon might not be the same procedure that another lawyer would undertake, nevertheless, his intent was to show that the government witness Sturgeon thought that the conduct alleged in the indictment was not consistent with the defendant's character. "Even the best criminal defense attorneys would not defend a particular client in the same way." *Id.*

During the hearing in the middle of the trial, in which the court questioned the defendant and his father, the defendant was given every opportunity to suggest that his counsel was ineffective. Had he done so, counsel could have asked to be relieved, or the court could have relieved counsel and declared a mistrial, if too much prejudice had already occurred within the trial. Instead, the defendant essentially elected to proceed.

Although the majority opinion notes that the court observed jurors snickering at counsel, sometimes that, also, is a trial tactic. If every occasion in which a juror snickers would give rise to a mistrial, then courts might have to try many cases over several times. It is often a trial tactic to get jurors to laugh with counsel, so as to present an effect of a farce or a joke, not a serious proceeding. Certainly, the prosecution would never want this levity to arise during trial. The right to counsel may be waived, like any other constitutional right. *Martin v. Rose,* 744 F.2d 1245, 1251 (6th Cir.1984). In each case involving a waiver, the particular facts and circumstances must be considered, " 'including the background, experience and conduct of the accused.' " *Id.* (quoting *Parshay v. Buchkoe,* 427 F.2d 978, 980 (6th Cir.1970)). In this case, the district court made every effort to allow the defendant and his father to show why counsel was ineffective. Their satisfaction with him as an attorney waived any conduct of his to that point, in view of the court's inquiry. This is confirmed by the failure of the defendant to raise the issue until his direct appeal had been denied, some six months after the Supreme Court denied certiorari and almost one year after the mandate was entered from

this court. Therefore, I would affirm the district court's denial of the motion to vacate.