UNITED STATES of America, Plaintiff,

v.

Anthony D. LIBERATORE, Defendant.

No. 1:92CR184.

United States District Court,
N.D. Ohio,
Eastern Division.

June 27, 1994.

James R. Wooley, Ann Rowland, Asst. U.S. Attys. for U.S.

J. Michael Murray, Jeremy A. Rosenbaum, Berkman, Gordon, Murray, Palda & DeVan, Cleveland, OH, for defendant.

## ORDER

SAM H. BELL, District Judge.

Now pending before the court is defendant's motion for a new trial filed pursuant to Fed.R.Crim.P. 33. The instant motion is brought on the basis of newly discovered evidence. Specifically, defendant claims that he is entitled to a new trial because defendant has discovered since the time of trial that he was incompetent to be tried and because his trial counsel was ineffective. Many of the issues discussed herein were also discussed in this court's previous order relating to a motion under 18 U.S.C. § 4241 to declare defendant incompetent to be sentenced, 846 F.Supp. 569.[1]

### I

Rule 33 provides that a district court may grant a new trial "if required in the interest of justice." As the Circuit recently repeated:

> In order to merit a new trial, [the defendant] was required to establish each of the four elements set forth in *United States v. O'Dell,* 805 F.2d 637, 640 (6th Cir.1986), *cert. denied,* 484 U.S. 859 [108 S.Ct. 170, 98 L.Ed.2d 124] (1987):
>
>> (1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would produce an acquittal.
>
> In applying the four-part test, we recognize that motions for a new trial based on newly discovered evidence are disfavored and should be granted with caution.

*United States v. Glover,* 21 F.3d 133, (6th Cir.1994).

Stated generally, defendant claims to possess new evidence which would lead to his acquittal, that evidence being that he was not

---

1. The previous order shall be cited herein as "Order at ——."

mentally competent to stand trial. Defendant also moves for a new trial on the basis of newly discovered evidence of ineffective assistance of counsel based on his trial attorneys' failure to raise the competency issue before or during the trial.

## A

■ The standard for evaluating when a defendant is mentally competent to stand trial was first stated in a brief per curiam opinion: "the test must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam).

In itself, the mere presence of a mental disease or defect is not sufficient to render a defendant incompetent under the standard set forth in *Dusky* or 18 U.S.C. § 4241, the statute governing mental competence. The disease or defect must be of sufficient magnitude to compromise defendant's mental capacities to the point that he functions below the level established in *Dusky.* This inquiry is a difficult one because it does not follow a bright line rule that *any* diagnosis of mental disease or defect is enough to demonstrate legal incompetency. The diagnosis of existence must be coupled with evidence of degree, to wit significant impairment. As the Eleventh Circuit explained in a case involving a 74–year old man exhibiting signs of Alzheimer's Disease:

> The district court found that the minor defects in Hogan's cognitive abilities did not render him incapable of providing rational assistance to his attorney. Even perfectly competent defendants often do not fully comprehend the intricacies of some of the defensive theories offered by their lawyers. That level of comprehension is not a requirement of competency. All that is required is that Hogan had a rational as well as a factual understanding of the proceedings against him and had sufficient present ability to consult with his attorney with a reasonable degree of rational understanding. We cannot say that

the district court clearly erred in finding that he did.

*United States v. Hogan,* 986 F.2d 1364, 1373 (11th Cir.1993).

Accordingly, to sustain his burden under Rule 33, defendant must offer newly discovered evidence that he suffers from a mental disease or defect *and* evidence indicating that the disease or defect reduced his mental capacity to the point that he was unable to formulate a rational and factual understanding of the proceedings or consult with his attorneys with a reasonable degree of rational understanding.

## B

■ With respect to defendant's claim of ineffective assistance of counsel, he must show that his attorneys' performance fell below an objective standard of reasonableness. In addition, defendant must show that the deficient performance prejudiced his defense sufficiently to make it reasonably probable that it rendered the trial unfair and the result unreliable. *Ward v. U.S.,* 995 F.2d 1317, 1321 (6th Cir.1993). *See also Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864. In making this inquiry, the court is further bound to "give a highly deferential scrutiny to counsel's performance, making every effort to evaluate counsel's conduct from his or her perspective *at the time the conduct occurred." Ward,* 995 F.2d at 1321 (citing *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065) (emphasis added).

With these standards in mind, the court turns to the evidence presented.

## II

As evidence, the parties incorporate the testimony received in conjunction with a previous competency motion. This testimony was received during the course of a two-day hearing. No additional evidence relating to a retrospective determination of the defendant's competency to stand trial was offered either by the defendant or by the government. The parties only made oral arguments at the second competency hearing.

Accordingly, the court revisits testimony previously discussed, focussing on the areas highlighted by counsel in their arguments.

## III

The evidence relating to the instant motion may be grouped into four categories. First, defendant presented anecdotal evidence from attorney Albert Giuliani, defendant's lead trial counsel, describing defendant's conduct before and during trial. Second, defendant offered lay opinion testimony from Giuliani regarding whether defendant was competent or not. Third, three expert witnesses testified regarding defendant's mental capacity at the time of the hearing. And last, the court received limited direct testimony from the experts regarding defendant's capacity at the time of trial.

The evidence shall be discussed in reverse order.

## A

■ This court held a hearing to address defendant's claim that he was not mentally competent to be sentenced. That hearing did not explicitly include the specific factual question now before the court. During the course of examining the expert witnesses, however, it became apparent that defendant's condition at the time of the trial was indirectly relevant to the question of competency to be sentenced. Once this became apparent, both parties were permitted to elicit testimony from the experts regarding their opinions about defendant's mental capacity at the time of trial.[2]

Dr. Robert L. Denney, Psy.D., testified that he was not comfortable giving an opinion on defendant's mental condition prior to June, 1992 when defendant's trial commenced. Dr. Denney did say that defendant suffered from dementia of an Alzheimer-type in June. The testimony from defendant's trial counsel, Albert Giuliani, relating to problems with the defendant while he was preparing for trial in May, 1992 was appar-

ently not sufficient for Dr. Denney to conclude with any degree of clinical certainty that the defendant was impaired prior to June.[3]

The evidentiary value of this testimony is very limited. The opinion only alerts the court to the presence of a condition without addressing the critical question of how severe that condition was during the relevant time period.

Dr. Denney explicitly testified that he did not feel that the retrospective question was before him when he conducted his examination. Dr. Denney did not spend any appreciable amount of time inquiring into the defendant's understanding of the elements of the crime, the nature of the evidence against him or the events which transpired in the courtroom. Without such inquiries, Dr. Denney was properly reluctant to offer an opinion regarding the extent of defendant's impairment at the time of trial.

Defendant asked Dr. Denney whether the testimony offered by the Giulianis raised a "serious question" about defendant's competence. The response was that it did. Of course, all questions regarding a defendant's right to participate in his trial are serious—a fact which the psychologist plainly recognized. But, Dr. Denney did not testify that defendant was unable to reasonably and rationally consult with his attorney before or during the trial. He did not even testify that it was probable that defendant suffered such an impairment at the time of trial. At best, the testimony discussed concludes that retrospective incompetency is a possibility which would require supplemental evaluation to determine.

Defendant seems to suggest that this court prevented defendant from securing more detailed testimony from Dr. Denney. Specifically, defendant points out that in the interest of maintaining analytic consistency, this court took up the question of contemporary competence in a separate proceeding from

---

**2.** Hereafter, defendant's competency to be sentenced will be referred to as his contemporary competence. The question now before the court, defendant's competency at the time of trial, will be referred to as his retrospective competency.

**3.** All three experts were present for most or all of the testimony of Albert Giuliani.

the present proceedings relating to the question of retrospective competence. As a result, Dr. Denney's evaluation of the defendant focussed on the former question and did not address the latter.

In fairness, however, defendant's argument fails to acknowledge that during the period between the ruling on the first competency motion and the hearing on the instant motion, no attempt was made to secure a referral to Dr. Denney for additional evaluation. Nor did defendant recall Dr. Denney at the second competency hearing. Likewise, defendant did not have any other doctor evaluate defendant since the last motion was resolved. This court did not prevent defendant from seeking additional expert information specifically dealing with retrospective competency. Defendant chose not to seek such supplemental opinions either from the experts used in the first hearing or from other experts.

Defendant also suggests that this case is analogous to *Dusky v. United States, supra,* and *Lagway v. Dallman,* 806 F.Supp. 1322 (N.D.Ohio 1992). In those cases, convictions were vacated because the original competency determination was erroneous *and* the passage of time rendered retrospective evaluation of the defendant problematic and unreliable. Defendant claims that so long as a "serious question" exists, defendant must be granted a new trial because a retrospective evaluation would be unreliable. This reasoning is flawed.

*Lagway* and *Dusky* are not procedural analogues to the instant cause. In both cases, the defendant raised the competency issue before an adverse verdict was returned. Retrospective evaluations were necessary only because the trial courts erred. In neither case was the defendant constrained by the specific requirements of Rule 33.

Here, defendant did not raise the issue of retrospective competency until after the verdict was returned. He is now obligated, under Rule 33, to produce evidence "that would lead to acquittal". The Rule does not permit vacating a conviction when the evidence suggests a mere possibility that an acquittal would follow. This court is un-

aware of any authority which establishes an exception to this rule in the instant cause.

In sum, Dr. Denney gave a very limited opinion. The inquiry described would not credibly have supported a more expansive opinion. In fact, it may be argued that by suggesting that this court prevented Dr. Denney from making additional inquiries, defendant all but concedes that the doctor's testimony, as currently constituted, is not sufficient to lead to acquittal.

Dr. Kurt A. Bertschinger's testimony was similarly circumscribed. While Dr. Bertschinger opined that it is likely that defendant had dementia of an Alzheimer-type at the time of trial, he too was unwilling to venture into the more uncertain arena of speculation concerning the severity of that impairment. As he explained, a patient with Alzheimer-type dementia remains susceptible to other conditions which may affect mental capacity such as depression or anxiety. In fact, Alzheimer-type dementia may appear worse than it actually is if the patient has a superseding dementia. Conversely, an Alzheimer patient may display relative improvement from one point in time to another if the other intervening mental conditions which caused the Alzheimer-type dementia to appear worse than it actually was are eliminated.

Dr. Bertschinger testified that defendant probably suffered from depression after the trial. This opinion is based on defendant's conduct and his experiences after the verdict was returned. This opinion is credible because it is consistent with the apparent differences between the way in which defendant appeared to Dr. Denney earlier in the Fall and the way in which he subsequently appeared to Dr. Bertschinger. This opinion also reflects a sophisticated appreciation of the multiple, complex forces influencing defendant's condition.

Dr. Bertschinger also suggested that it was at least possible that defendant suffered from depression before and during the trial. Defendant immediately attacked that opinion because it was "mere speculation" and lacked a requisite degree of clinical certainty. By cutting off and denigrating Dr. Bertschinger's opinions concerning possible pretrial de-

pression, the view left by defendant is merely that defendant was suffering from mild dementia of an Alzheimer-type of unknown degree before and during trial.

In Dr. Bertschinger's opinion, an opinion which this court finds sound and persuasive, not all people diagnosed with Alzheimer-type dementia are legally incompetent. They are analogous in mental state to those retarded persons who, if not profoundly retarded, may be legally competent while clinically impaired. Accordingly, without an opinion regarding the severity of defendant's condition before and during trial, we find that Dr. Bertschinger's testimony does not constitute new evidence that defendant was incompetent at the time of his trial.

■ Dr. Charles A. deLeon did render a definitive opinion on defendant's competency at the time of trial. Because of the limitations imposed on his opinion by the selectivity of his interview process, the lack of sophisticated, multi-causal analysis and other defects in his analysis of legal standards applicable to defendant's condition, it is enough to say that Dr. deLeon's views are far from sufficient to justify setting aside the verdict in this case.

Interestingly, in rendering this opinion, Dr. deLeon explicitly said that he did not place great weight on the Giuliani's testimony because they were making a retrospective reevaluation of defendant's conduct. Instead, Dr. deLeon relied on affidavits from the defendant's son and former spouse, as well as an interview with defendant's former spouse.

This expert witness spent only one hour with defendant. His opinion regarding retrospective testimony relies primarily on statements made by individuals not offered as witnesses by defendant. As a result, the court is ill-situated to assess whether the underlying factual predicate relied on by Dr. deLeon is one which this court would consider accurate. Also, his opinion does not incorporate the sophisticated multi-causal analysis which Dr. Bertschinger's testimony persuasively indicated is necessary in a case like this. As was discussed in the previous order, Dr. deLeon appears to have improperly assigned significance to certain statements

made by the defendant and his family. *See* Order at 578. And finally, Dr. deLeon's conclusion that the defendant was incompetent was made in light of the defendant's description of the standard for legal competence. The actual legal standard is not as rigorous as the standard expounded by defendant.

Accordingly, we conclude that Dr. deLeon's factual assumptions were inadequate. Subjectively, Dr. deLeon's assessments of statements made to him reflect errors apparently caused by his failure to adequately investigate the position adopted by the defendant throughout this case and in prior cases. Objectively, Dr. deLeon's analysis of defendant's condition appears to overlook other factors considered by the other experts.

The opinion rendered by Dr. deLeon is not seen as one which would justify setting aside the verdict in this case.

## B

▪ ■ In addition to arguing that the experts directly testified that defendant was mentally incompetent at the time of trial, defendant also argues that incompetence at the time of trial can be inferred from the expert testimony regarding competence at the time of sentencing. For this argument, defendant relies on the propriety of extrapolating defendant's past condition from his present condition.

First, there is no evidence suggesting the rate at which defendant is regressing. There is, however, testimony that patients with Alzheimer-type dementia are affected in different ways and at different rates. Without evidence of a specific rate, projecting the defendant's past condition from his current condition is obviously problematic. Second, even assuming that extrapolation is possible and appropriate, to do so the court must know the current condition of defendant's Alzheimer-type dementia. Given Dr. Bertschinger's testimony that defendant's Alzheimer-type dementia may have appeared worse than it was because the defendant suffered a superseding post-conviction depression, the starting point for the extrapola-

tion is not clear. Finally, this court must express grave doubts about the clinical propriety of such an approach. If extrapolation were proper, then, presumably Dr. Denney or Dr. Bertschinger would have used this technique in reaching an opinion. Rather, as has been noted, both doctors insisted that additional inquiry would be necessary to render an opinion.

Accordingly, this court finds that inferring a past condition of competence based on presently determined competence and the known pathology of the mental defect is improper under the present circumstances in as much as the factual record is insufficient to support such a computation. The pathology of Alzheimer-type dementia is neither so uniform nor so defined to render a sufficient degree of predictability to the course of defendant's malady. Likewise, the degree of impairment attributable to the Alzheimer-type dementia is not sufficiently established to render any computation meaningful. And finally, such a computation would appear to be outside the appropriate use of the existing data according to the standards and norms of the mental health profession.

In short, the evidence that defendant may be *currently* impaired to an unknown degree by Alzheimer-type dementia is not sufficient to support a motion for new trial.

### C

■ The last evidence to be considered is the testimony of trial counsel Albert Giuliani[4] who offered anecdotes tending to suggest defendant's capacity before and during trial. He also offered his opinion of defendant's competence.

At no time prior to the day of sentencing did *any* attorney for the defendant raise *any* issue relating to defendant's mental or physical ability to withstand trial. Only after the jury returned its verdict and immediately before this court was to proceed to sentencing was the issue of defendant's competence raised by defendant's new counsel and supported by defendant's lead trial counsel and long-time acquaintance, attorney Giuliani.

In the course of considering Giuliani's testimony in the first order, this court noted concern about his objectivity after the trial. *See* Order at pp. 573, 574–75. Specific reference was made to Giuliani's 18–year relationship with the defendant. *Id.* at 573. Reference was also made to the fact that the attorney's testimony was not corroborated by testimony from co-counsel Robert Dixon. *Id.* at 574. This omission can not be ignored in light of Giuliani's testimony that during the trial, Dixon was in charge of answering the defendant's questions. It would appear that defendant has chosen not to call his former counsel who was by Giuliani's own description best situated to assess defendant's capacity, and as suggested by this court previously, a seemingly more objective and reliable witness.

In discussing Giuliani's testimony in the second hearing, defendant argues that the testimony must be accepted because it is unrebutted. Short of eavesdropping on defendant's meetings with counsel—conduct constitutionally and professionally prohibited—the government could not directly rebut Giuliani's testimony. This court's previous order did imply that defendant could corroborate Giuliani's testimony by calling Dixon, but defendant chose to present no witnesses at the second competency hearing. *See* Order at 574.

But the Giuliani testimony will not be set aside based solely on the failure of defendant to corroborate it with testimony from co-counsel. However, the failure to corroborate the previously discredited testimony renews the concern that trial counsel's recollections may be subject to the biases previously discussed.

In addition to concern that Giuliani may now subconsciously exaggerate past events out of concern for his client, the court also finds the testimony, even if accepted as true, difficult to reconcile with the expert opinions.

According to Giuliani, preparation sessions with defendant perceptibly declined in quality as the trial approached. In general,

---

4. The testimony of Albert Giuliani's father, Elmer Giuliani, was discussed in the previous order. The elder Giuliani's testimony primarily relates to contact with the defendant after the trial and adds little to the current inquiry so it need not be reviewed at length. *See* Order at 571.

morning sessions were better than afternoon sessions. Giuliani believed that the afternoon sessions interrupted the daily routine established by defendant since his release from prison over a year before. Defendant was described as failing to remember the subject of discussions from previous days and asking questions which, in counsel's opinion, had been resolved during discussions on previous days. Also, when defendant answered questions, his answers in the beginning were vague and imprecise demanding patience and time on the part of counsel to focus and clarify them. Ultimately, Giuliani asked the defendant not to come to his office so that Giuliani could prepare for the trial undisturbed.

At the start of the trial, Giuliani apparently believed that defendant had improved and did understand what was transpiring, but, when the government played numerous tape recordings, defendant displayed confusion. Giuliani specifically testified that defendant complained about not being able to hear the tapes and not recognizing the voices. The attorney also testified that defendant continued to repeat questions and misevaluated the success of the only defense witness.

Giuliani concluded by testifying that he currently does not believe that defendant was competent at the time of trial. The evolution of Giuliani's opinion about defendant's competence is best expressed in the former's affidavit:

> At first, I attributed this inability on defendant's part to his age, limited education and generally poor health as well as the rapid, fatiguing pace of trial. However, by the end of trial and particularly the last two days of trial, defendant's condition deteriorated dramatically to the point that, in hindsight, I now question whether he was competent to receive the jury's verdict.

(Giuliani aff. at ¶ 5.)

During cross-examination of the experts, defendant elicited a description of the course of Alzheimer-related dementia. The general course of the disease is a slow, progressive deterioration. Dr. Bertschinger's previously discussed testimony indicates that the Alzheimer progression may appear different in each patient based on the absence or presence of additional mental maladies. But in general, the testimony suggests that Alzheimer-type dementia follows an irreversible pattern of gradual mental decline.

According to Dr. Denney, a period of a few months is not usually significant in the overall regressive course of Alzheimer-type dementia. In other words, the relative change in a person's mental capacity over any period of a few months will generally not be great. Giuliani testified that defendant noticeably regressed in the weeks preceding trial, perceptibly improved at the beginning of trial and then dramatically regressed in the last days of trial. According to the attorney's lay observation, defendant experienced three measurable shifts in capacity in less than two months.

This pattern is not consistent with the overall Alzheimer pattern described by the experts during defendant's cross-examination. The described pattern is at least not superficially inconsistent with Dr. Bertschinger's brief speculation that the defendant possibly suffered depression before and during trial. Defendant attacked this opinion as "mere" speculation unsupported by the necessary clinical predicate to render it scientifically reliable. Dr. Bertschinger agreed that there was less certainty about this possibility than about his opinion that defendant probably was depressed after the trial.

By virtue of defendant's cross-examination of the experts, the court is left with testimony about the general course of defendant's probable Alzheimer-type dementia. This course is not consistent with the conditions observed by Giuliani. Defendant aggressively squelched any speculation by Dr. Bertschinger about other diseases or defects which would have been more consistent with the observed conditions.

This record can be viewed in a number of ways. First, Giuliani's recollections may be inaccurate due to bias as previously discussed and thus the shifts may not have occurred as he now remembers them. Second, defendant's alleged behavioral shifts may not have been caused by defendant's mental condition but rather were his unimpaired reaction to the trial. In the previous

order, the second possibility was considered and adopted. *See* Order at 573–74.

The fact that defendant's dramatic decline at trial is described as having occurred at the point in the trial when the most personal and damaging evidence was offered by the government is too great a coincidence to overlook. Parenthetically,. the fact that the decline occurred at this point is tangible evidence that defendant did appreciate the evidence being offered against him. Also, undiscussed by either party is the fact that defendant has a hearing problem. It is not implausible that defendant's confusion and frustration arose from an auditory rather than a mental failing. The fact that defendant specifically complained that he could not hear the tapes suggests this as an explanation.[5]

It is evident from defendant's interview with Dr. Bertschinger as well as from defendant's conversations on the logger tapes from Springfield that defendant did recall elements of the offense, the identities of individuals who testified, the circumstances under which they testified, and the potential strengths or weaknesses of some of that testimony. While the evidence before the court does not indicate that defendant understood every detail of the charge or of his trial, that kind of proof is not the government's burden now or ever. Evidence that the defendant does have contemporaneous rational understanding and reasonable recollection of the trial, however, does cast doubt upon Giuliani's description of a totally confused, incompetent client.

Defendant assumes that all of defendant's conduct is caused or affected by his Alzheimer-related dementia. The experts' opinions contradict this assumption. Since the record does not contain a definitive assessment of the contemporaneous severity of the Alzheimer-type dementia, it is impossible to predict whether the dementia was severe enough at the time of trial to produce the described conduct. We must not ignore the uncontradicted evidence that an individual in the early, mild stages of Alzheimer-type dementia remains rationally aware of his surroundings and circumstances.[6] Giuliani's testimony is consistent with an individual who was rationally aware of his surroundings and circumstances. Defendant's post-trial telephone conversations and his interview with Dr. Bertschinger are also consistent with an individual who was rationally aware of events at his trial and the general issues involved in the charges against him.

To find defendant retrospectively incompetent based upon Giuliani's testimony, the court must reject the reasonable possibility that defendant's behavior was a rational response to the pressures of trial and adopt the conjecture that the behavior was caused by a mental disease of relatively undefined severity. *The record does not support choosing the latter view.*

In sum, the court finds the relationship between Giuliani and defendant to be a close one existing over many years. While this closeness no doubt enhanced counsel's efforts at trial to zealously represent his client, it *now raises concerns for this court when* counsel presents unrebuttable testimony relating to matters never before raised. Necessarily, the court must search the record for independent corroboration or consistency with objective evidence. Giuliani's testimony is not corroborated, and the testimony raises questions of consistency. Viewed in relation to the expert testimony, Giuliani's testimony is more consistent with a non-Alzheimer explanation for the behavior than with the Alzheimer explanation pressed by defendant.

Accordingly, the testimony of Albert Giuliani is not sufficient new evidence upon which to grant a motion for a new trial.

---

5. The government also distributed transcripts of the tapes played at trial, so even if defendant had difficulty physically hearing the tapes, he still had the ability to follow the evidence being offered.

6. Dr. Bertschinger testified that patients in the early stages are often aware of the world around them and are also acutely aware that there are certain things which they can no longer do or remember. According to Dr. Bertschinger, rational recognition of their growing limitations and their bleak prognosis causes some patients to suffer depression.

## IV

Given the conclusion reached in part III, this court can not find trial counsel ineffective. The record reflects that while dealing with defendant may have been difficult at times, defendant's reactions were not outside the range of behaviors a trial attorney will ordinarily observe in a defendant involved in an extraordinary case like this. Giuliani's affidavit plainly reflects that he was aware of defendant's conduct and that he ascribed it to a reasonable cause. He made special efforts to accommodate defendant by designating co-counsel to deal with defendant.

The evidence currently before the court fails to demonstrate that defendant was incompetent. To conclude that defendant would have been found incompetent had a hearing been held before or during the trial, this court would have to indulge in rank speculation. The evidence, considered as a whole, confirms that while defendant probably suffers from a mental disease, the disease is of unknown severity and, at the time of trial, may not have affected defendant's competency in a legally significant way. The mere fact that counsel was unaware of the disease does not render him ineffective when it appears from the record that the disease did not significantly impair his client's capacity.

At the time of trial, defense counsel behaved in an objectively reasonable way. Moreover, there is no evidence that defendant was prejudiced by the allegedly deficient performance. Accordingly, there is no evidence of ineffective assistance of counsel.

## V

As indicated, this court is not persuaded that defendant was incompetent at the time of trial. Nor is this court persuaded that his trial attorneys were ineffective. Defendant's motion for a new trial is DENIED.

IT IS SO ORDERED.