**Thomas MICKENS, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. 97–CV–2122 (TCP).

United States District Court, E.D. New York.

June 16, 1999.

Merrill Rubin, New York City, Jonathan Shapiro, Alexandria, VA, for petitioner.

Edny Stuart Altman, Asst. U.S. Atty., for Respondent.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Now before the Court is a Motion to Vacate Sentence brought pursuant to 28 U.S.C. § 2255 by petitioner Thomas Mickens ("Mickens"). For the reasons stated below, the Motion is denied.

## BACKGROUND

On May 23, 1988, an indictment was filed charging Mickens with conspiring to distribute cocaine, in violation of 21 U.S.C. § 846 (one count), and with distributing cocaine in violation of 21 U.S.C. § 841 (five counts). On August 29, 1988, a superseding indictment was filed which added several new charges including one count of conspiracy to defraud the United States in violation of 21 U.S.C. § 371; four counts of income tax evasion in violation of 26 U.S.C. § 7201; one count of filing a perjurious income tax return in violation of 26 U.S.C. § 7206(1); eight counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(I) and (11); and one count of structuring a financial transaction as part of a pattern of illegal activity, in violation of 31 U.S.C. § 5324(3). Mickens pled not guilty to these charges. Following a four-month jury trial, Mickens was acquitted on the substantive drug possession and distribution charges but was convicted on all other counts. He was sentenced to an aggregate term of imprisonment of thirty-five years, a fine of $1,000,000, and a special assessment of $800.

At trial, the substance of the prosecution's case was that Mickens orchestrated a profitable cocaine distribution network in Queens, New York over a five-year time period. Testimony was presented by two law enforcement officers who described many undercover cocaine purchases from individuals who were identified as Mickens' underlings. For instance, undercover officer Austin Fields purchased cocaine from Anthony Jacobs, a known "lieutenant" in the Mickens organization, on two separate occasions. On another occasion, surveillance agents detected Mickens in the vicinity of a narcotics deal between undercover Officer Terance Miller and George Jenkins, another underling of Mickens'.

In addition to the direct evidence of narcotics activity, the prosecution introduced evidence that Mickens engaged in a lifestyle of extravagant spending. This evidence connected Mickens to the purchase of eighteen automobiles with an aggregate value totaling approximately $556,000, and sixteen properties which included commercial property in Queens, a $730,000 residence in Dix Hills, New York, a residence in Miami, Florida, and a condominium in California. Mickens' former attorney testified that he assisted Mickens in the purchase of several properties using cash and money orders. He also testified that he assisted Mickens in laundering money by preparing contracts and closing documents that significantly understated the properties' actual prices. Furthermore, evidence indicated that many of Mickens' automobile and real estate purchases were executed with the assistance of nominees who acted on Mickens' behalf. For instance, trial evidence established that Mickens' girlfriend, Shelby Kearny, acted on his

behalf in the purchases of property in Hempstead, New York and the residence in Dix Hills, New York. The prosecution also presented evidence that Bettina Jacobs Celifie acted as Mickens' nominee in purchasing both the California condominium and a $133,350 yacht. The aggregate profits generated by the conspiracy were calculated at $1,885,000 between 1984 and 1987. (Pre–Sentence Report, *United States of America v. Anthony Jacobs,* 88–CR–309.)

On direct appeal, Mickens asserted that comments made by the trial Court addressing the strategy of Robert M. Simels ("Simels") during trial deprived him of his constitutional right to a fair trial. *United States v. Mickens,* 926 F.2d 1323 (2d Cir. 1991), *cert. denied* 502 U.S. 1060, 112 S.Ct. 940, 117 L.Ed.2d 111 (1992). He also challenged the Court's denial of a motion to suppress certain evidence obtained during a sweep of his residence in Dix Hills, and the Court's admission of the following evidence: a threatening gesture made by Mickens towards his former attorney when the latter appeared in the courtroom to testify, a prior narcotics conviction, and in-court identifications made by car salesmen. Finally, Mickens argued that the Court's instructions to the jury regarding elements of money laundering constructively amended the indictment against him, and that the currency reporting requirements of 31 U.S.C. § 5313 were unconstitutional. *Id.* The Second Circuit affirmed the judgment of the District Court. *Id.* In addressing the issue of whether Mickens received a fair trial, the Second Circuit stated that defense counsel engaged in improper behavior during the course of the trial. Specifically, the court took note of counsel's reprehensible conduct which amounted to dilatory tactics, attempts to pry into restricted avenues of inquiry, inappropriately suggestive and argumentative questions, and reprehensible verbal attacks on the District Court.

## DISCUSSION

Mickens now petitions this Court for relief pursuant to 28 U.S.C. § 2255, asserting a violation of his Sixth Amendment right to a fair trial on grounds of ineffective assistance of trial counsel, improper prosecutorial conduct, conflict of interest, insufficient evidence, improper jury instructions, a sentence calculation contrary to law, and ineffective assistance of appellate counsel.[1]

### A. Unfair Trial

■ Defendant-appellant Mickens claims that Simels' persistent combative conduct during the course of the trial deprived him of a fair trial. He asserts that Simels' conduct was so outrageous as to constitute ineffective assistance.

The standard for ineffective assistance of counsel has been set out by the Su-

---

**1.** Mickens' direct appeal did not include the issues now before the Court. Where a criminal defendant fails to raise a claim on direct review, the claim may be raised in a § 2255 motion only if the defendant can demonstrate either: (1) 'cause for failing to raise the issue, and prejudice resulting therefrom,' or (2) 'actual innocence.' *Rosario v. United States,* 164 F.3d 729, 732 (2d Cir.1998) (citing *Douglas v. United States,* 13 F.3d 43, 46 (2d Cir.1993); *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828, (1998)). Mickens fails to satisfy either of the Rosario requirements for the absence of the instant claims from that appeal. First, he offers no reason for having failed to raise the instant issues on direct appeal save to argue that his appellate counsel's failure to raise them constituted ineffective assistance of counsel. Mickens supplies no evidence, precedent, or even argument to support this claim, and the Court dismisses it as meritless. *See Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The following analysis of the claims now before the Court indicates further that, as the government points out, there can have been no prejudice resulting from appellate counsel's failure to raise the instant claims on appeal, even if Mickens had provided an explanation for such failure. Accordingly, Mickens' claims are most probably procedurally barred. The Court nonetheless examines the issues raised in order to establish conclusively their lack of validity.

preme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There the Court stated: "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. 2052. For a successful claim, the defendant must meet a two-pronged test, showing first that counsel's performance was deficient, and second that the deficiency prejudiced the defense. *Id.* at 687, 104 S.Ct. 2052. To show such deficiency, it must be established that "counsel made errors so serious that [he or she] was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Id.* To show prejudice, it must be established that the claimed lapses in counsel's performance rendered the trial so unfair as to "undermine confidence in [its] outcome." *Id.* at 694, 104 S.Ct. 2052.

The Court further stated that the Sixth Amendment inquiry asks whether the attorney's conduct was "reasonably effective." *Id.* at 687, 104 S.Ct. 2052. To counteract the natural tendency to fault an unsuccessful defense. a court reviewing a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052. "Prevailing norms of practice as reflected in American Bar Association standards and the like ... are guides to determining what is reasonable, but they are only guides." *Id.* at 688, 104 S.Ct. 2052. Moreover, the reasonableness of counsel's performance should be judged "on the facts of the particular case. viewed as of the time of counsel's conduct." *Id.* at 690, 104 S.Ct. 2052. Furthermore, there is a strong presumption that counsel's performance is within the "the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052.

 The case law on the issue of failed trial strategy is clear. In *United States v. DiTommaso*, 817 F.2d 201, 215

(2d Cir.1987), the court stated, "[w]e will not second-guess trial counsel's defense strategy simply because the chosen strategy has failed." *See also United States v. Reyes*, 1991 WL 95395, at *4 (S.D.N.Y. May 30, 1991). Moreover, "[a]n advocate must be given some latitude in deciding upon an appropriate trial strategy." *United States v. Helgesen*, 669 F.2d 69, 72 (2d Cir.1982).

Mickens argues that counsel engaged in outrageous conduct during the course of the trial which included futile and prolonged examinations, failure to abide by the Court's instructions and outright contempt for the Court's rulings. Although Simels did engage in improper behavior during the course of the trial, his conduct does not amount to deficient performance. Mickens fails to overcome the presumption that Simels' behavior "might be considered sound trial strategy." *See Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955) (holding that counsel's failure to file a motion to quash does not overcome presumption of effectiveness because it could have been trial strategy). Although some of Simels' performance was outlandish, there is no evidence that it could have been considered anything less than a trial tactic aimed at instilling reasonable doubt in a jury. Given the fact that Mickens' main argument at trial was that there was no evidence linking him to the drug charges, coupled with the fact that he faced substantial evidence of guilt, it was a plausible strategy for Simels to try to undermine the credibility of the government's case by characterizing Mickens as a victim of intense prosecution as well as an aggressive judicial system. Considering this, it was a plausible tactical choice for Simels to refuse to stipulate to even the most basic of facts. At the same time, Simels presented evidence calculated to draw into question the government's account of events in order to create the impression that the alleged drug sales were "hotly contested." (Pet. Mem. at 2.) Simels' conduct, although histrionic, was a

tactical choice aimed at swaying the jury on the issue of Micken's innocence through radical means. Although the strategy proved unsuccessful, it still falls within the realm of acceptable trial strategy. *Helgesen*, 669 F.2d at 72.

Moreover, Petitioner relies on *Wise v. Smith*, 735 F.2d 735 (2d Cir.1984), to prove that Simels' performance was analogous to the ineffective assistance of counsel in that case. In *Wise*, the defense lawyer left the court room during trial. Since Simels was present throughout the trial, Mickens' reliance on *Wise* is misplaced. Other cases cited by Mickens involve absolute denigration of the trial proceedings. *United States v. Lumumba*, 794 F.2d 806, 813 (2d Cir.1986) (defense attorney called the judge a "disgusting bigoted practical joke"); *United States v. Sacher*, 182 F.2d 416, 419 (2d Cir.1950), (attorney characterizes the McCarthy-era contempt proceeding an "evil and illegitimate product of a bipartisan conspiracy ... in keeping with the sinister and police state of this trial"). Simels' conduct in this case, however, did not descend to name-calling or, with the exception of a false accusation, to a direct verbal assault on the Court. Finally, Mickens relies on *Ward v. United States*, 995 F.2d 1317 (6th Cir.1993) where the court pointed to the "jurors' 'snickering' and the inability of [the prosecutor] and the judge to understand counsel's antics [as tending] to show defense counsel's performance fell below an objective standard of reasonableness." *Ward*, 995 F.2d at 1322. In contrast to the present case, there is no evidence that Mickens' jury displayed any outward sign of bias as a result of Simels' conduct.

In sum, since Mickens has failed to prove that defense counsel's performance was deficient, his claim of ineffective assistance of counsel fails.

## B. Improper Prosecutorial Conduct

█ Mickens further claims that the government mounted an improper ad hominem attack on defense counsel during closing argument. Specifically, he asserts that the government disparaged Simels' presentation of his claims rather than addressing the merits of the case. In support of this assertion, Mickens claims, for example, that the government accused Simels of employing "tricks" and "smokescreens." (Tr. 8243, 8264.) He also points to another assertion during the government's summation: "When [one] listen[s] to Mr. Simels' summation one thing that leapt out at you is [that] in Mr. Simel's world and in the world of Mr. Simels, everybody lies." (Tr. 8278.)

█ Case law has indicated that attacks on the credibility or motives of defense counsel are not permissible. *United States v. Friedman*, 909 F.2d 705 (2d Cir. 1990); *Bruno v. Rushen*, 721 F.2d 1193 (9th Cir.1983), *cert. denied*, 469 U.S. 920, 105 S.Ct. 302, 83 L.Ed.2d 236 (1984). While the general rule prohibits such attacks, a prosecutor does have the right to comment on the defense counsel's argument during summation. *See United States v. Caputo*, 808 F.2d 963, 968 (2d Cir.1987) (holding that government's reference to the "misrepresentations and sheer inventions" of defense counsel was appropriate response since defense counsel made several statements during summation which led the judge to reprimand him for statements which compared the government's investigatory tactics to "Hitler's Germany"); *United States v. Praetorius*, 622 F.2d 1054, 1060–61 (2d Cir.1979) (holding that defense counsel's accusations of a "frame up" or attempt to "dupe" the jury, "rendered quite proper the relatively mild response of the Assistant United States Attorney" in criticizing the defense counsel's attacks on the integrity of the government's case and the good faith of the government's agents, witnesses, and prosecutorial staff). In *United States v. Marrale*, 695 F.2d 658, 667 (2d Cir.1982), the Second Circuit stated that the prosecution's comments in direct response to defense counsel's arguments were provoked by a "permissible desire to dispute defense

histrionics." The court further noted that the trial court "surely was in a better position than we to evaluate the subtle behavioral defense tactics" which made the prosecutor's summation proper. *Id.* In the present case, the government made no substantive accusations and cast no aspersions on Mickens' attorney, either as a defense attorney or in his own right. As in Marrale, the complained-of comments were in direct response to defense counsel's assertions and arguments made throughout the trial. *Id.* at 667.

## C. Conflict of Interest

■ Mickens next asserts that a conflict of interest between himself and Simels arose which denied him his Sixth Amendment right to effective assistance of counsel, arguing that their interests diverged during the course of the trial. Specifically, Mickens asserts that he had an interest in a trial where the jurors could focus exclusively on trial issues while Simels had an interest in confronting the trial judge.

■ The Second Circuit has distinguished three categories of Sixth Amendment violations. *See United States v. Saia,* 118 F.3d 65 (2d Cir.1997). The first category is comprised of *per se* violations of the Sixth Amendment. *Id.* at 70. The Second Circuit has found two circumstances which constitute a *per se* violation: (1) where the attorney was not licensed to practice law because he has failed to meet the requirements of admission to the bar, and (2) where the attorney was implicated in the defendant's crime. *See Bellamy v. Cogdell,* 974 F.2d 302, 306 (2d Cir.1992). *See also Tippins v. Walker,* 77 F.3d 682, 688–89 (2d Cir.1996) (suggesting that an attorney's sleeping throughout a substantial portion of the defendant's trial may constitute a *per se* violation).

■ The second category involves conflicts of interest between attorney and client that do not constitute *per se* violations, but may threaten adequate representation. To prevail on this claim a de-

fendant must prove an actual conflict of interest that resulted in a "lapse of representation." *Saia,* 118 F.3d at 71 (citation omitted). Once this is proven, prejudice is presumed. *Saia,* 118 F.3d at 71.

■ The third category recognizes claims of ineffective assistance of counsel that are unrelated to a conflict of interest. *Id. See Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. Under this analysis, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052. Mickens fails to establish a conflict of interest through a claim of ineffective assistance because of the reasons previously discussed in Section "A" above.

In the instant case, Mickens does not argue that there was a *per se* violation of his Sixth Amendment rights, but contends that there was a conflict of interest between himself and Simels with respect to trial strategy throughout the trial. However, under the circumstances of this case, this difference in opinion does not give rise to an actual conflict of interest. Simels' conduct throughout the course of the trial was inherently part of his trial strategy rather than a source of divided loyalty. For example, the record shows that throughout the trial, Simels consistently worked to introduce evidence to contradict the government's version of events and to cast the government's version in the most negative light possible. Even Mickens' Memorandum notes that the evidence of his alleged drug sales was "hotly contested." (Pet. Mem. at 2.) Although one may question the effectiveness of Simels' tactics, there was no lapse in representation. Thus, there is no basis for Mickens' claim that his counsel was operating under a conflict of interest at trial.

## D. Insufficient Evidence

■ Mickens next asserts that the evidence presented during trial was insufficient to sustain the drug conspiracy, tax evasion, and money laundering counts. Specifically, he argues that there was in-

sufficient evidence connecting Mickens to drug dealing and that, without this proof, each count fails. Furthermore, he asserts that appellate counsel's failure to raise these claims on appeal deprived him of effective assistance of counsel.

In challenging the sufficiency of evidence after a conviction, a defendant bears a heavy burden. "The proof must be viewed in the light most favorable to the government and all reasonable inferences must be drawn in the government's favor. If *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the conviction must be upheld." *United States v. Keats*, 937 F.2d 58, 62 (2d Cir.1991) (emphasis in original) (citations omitted); *see also United States v. Giraldo*, 80 F.3d 667, 673 (2d Cir.). *cert. denied*, 519 U.S. 847, 117 S.Ct. 135, 136 L.Ed.2d 83 (1996) (explaining that evidence must be viewed "in the light most favorable to the government," drawing all inferences and deciding all issues of credibility in the government's favor) (citations omitted). Furthermore, the Second Circuit states that

> pieces of evidence must be viewed in conjunction, not in isolation, and we must affirm the conviction so long as, from the inferences reasonably drawn, the jury might fairly have concluded guilt beyond a reasonable doubt. The weight of the evidence is a matter for argument to the jury, not a ground for reversal on appeal. These principles apply whether the evidence being reviewed is direct or circumstantial.

*Giraldo*, 80 F.3d at 673 (citations omitted). Under these standards, Mickens' claims may not prevail. Taken in the light most favorable to the government, the evidence was sufficient to permit a rational juror to infer beyond a reasonable doubt that Mickens was involved in a drug conspiracy.

The record contained extensive evidence of Mickens' involvement in the drug conspiracy. First, the government introduced testimony concerning drug deals that took place in and around Micken's presence and property. For instance, New York City Police Detective Austin Fields testified about drug deals he had arranged with Mickens' friend and associate both in a store and in a Volvo owned by Mickens. (Tr. at 174–78.) Detective Fields further testified that he saw Mickens in the area at the time of one of the deals. (Tr. at 179.) Detective Terance Miller identified the defendant as having been present at an additional drug sale, as well as testifying to having conducted another sale with a third party in Micken's automobile. (Jr. at 399, 417, 979.) In addition, Police Sergeant William Tartaglia, Detective Kevin Michael Tobin, and Special Agent Lane Wood all testified to having seen Mickens in the area during the time one of his underlings was procuring drugs for Detective Miller. (Jr. At 857–859, 914–916, 1198–1199.)

The government also introduced evidence of Micken's past drug-related activities. For instance, New York City Police Detective Joseph Belardi testified to Micken's 1983 arrest and the cocaine that was found on Mickens' person. (Tr. at 1464–1465.) Detective Rodney Smith also testified to his experience in 1984 in which Mickens personally sold him drugs. (Tr. at 1527–1529, 1534–38.) Although this evidence was not proof of the charges of which Mickens was convicted, the jury could properly infer the defendant's opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake as to the activity in his neighborhood and the likely significance of his acts during the duration of the charged conspiracy. FED. R.EVID. 404(b).

In addition to the direct evidence of narcotics activity, the government presented witnesses who testified to Mickens' extravagant spending designed to conceal his involvement in the drug network. Specifically, witnesses testified to Mickens' purchase of eighteen automobiles, totaling approximately $556,000. Mickens was also connected to the purchase of some sixteen properties which included commercial

property in Queens, a $730,000 residence in Dix Hills, New York, a residence in Miami, Florida, and a condominium in California. Mickens' former attorney testified that he assisted Mickens in purchasing several properties using cash and money orders. As described earlier herein, trial evidence also established that Mickens' automobile and real estate purchases were accomplished through the use of nominees. Taken in the light most favorable to the government, the evidence of Mickens' opulent spending habits and secret cash-based financial dealings with nominees was sufficient to permit a rational juror to infer beyond a reasonable doubt that Mickens occupied a central position in a successful cocaine operation.

### E. Jury Instruction as to the Structuring Charge

■ Mickens contends that he was improperly convicted of violating the structuring laws because the Court failed to properly instruct the jury on the government's burden of proving that he acted with the knowledge that his acts were illegal. Consequently, he argues, his conviction on this count should be vacated. Although the Supreme Court has since held that the jury was not properly charged with respect to this element, the Court agrees with the government's argument that such failure amounts to harmless error.

Federal law requires banks and other financial institutions to file reports with the Secretary of the Treasury whenever they are involved in a cash transaction that exceeds $10,000. 31 U.S.C. § 5313 (1993). It is illegal to "structure" transactions for the purpose of evading a this reporting requirement. 31 U.S.C. § 5324. A person willfully violating this provision is subject to criminal penalties. 31 U.S.C. § 5322.

At the time of Mickens' trial, there was disagreement among the Circuits as to what was necessary to prove this "willfulness" requirement. In *Ratzlaf v. United States,* 510 U.S. 135, 136–37, 114 S.Ct. 655,

126 L.Ed.2d 615 (1994), the Supreme Court resolved this issue, holding that the government must prove that a defendant acted with knowledge that his conduct was unlawful. The Second Circuit has held that this decision is to be applied retroactively. *Peck v. United States,* 106 F.3d 450, 456 (2d Cir.1997) (*"Peck II"*) (affirming that *Ratzlaf* should be applied retroactively to cases on collateral appeal).

A review of the record reveals that the jury in Mickens' trial was (in retrospect) not instructed properly. The jury was instructed that if they found that Mickens "acted with the purpose of evading the reporting requirements of [31 U.S.C.] Section 5313(a)," they should find Mickens guilty. (Tr. at 8360). In accordance with *Ratzlaf,* the jury would also have to consider whether Mickens knew his conduct was unlawful. *Ratzlaf,* 510 U.S. at 137, 114 S.Ct. 655.

In order to obtain habeas relief, a defendant must satisfy the "cause and actual prejudice" standard as set out in *United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (explaining that when a defendant raises the issue of an erroneous structuring, instruction on collateral appeal, he must satisfy the "cause and prejudice standard"). Under *Frady,* a defendant must demonstrate "cause" excusing his failure to appeal, and "actual prejudice" resulting from the instructional error. *Id.; see Peck II,* 106 F.3d at 456, (citing *Peck v. United States,* 73 F.3d 1220, 1225 (2d Cir.1995)) (*"Peck I"*). In this case, Mickens demonstrates "cause" for his failure to pursue on direct appeal since the law in the Second Circuit at the time of his direct appeal stated that the existing law regarding scienter in the jury instruction was proper. Furthermore, the Supreme Court had not yet agreed to hear *Ratzlaf* at the time. *Peck II,* 106 F.3d at 456. Thus an appeal on that particular issue would have been frivolous. *Id.*

As for the second step of the analysis, there is dispute as to what standard should be applied in proving "actual prejudice." Mickens contends that the instructional error should not be subject to harmless error analysis. However, case law indicates otherwise.

The Second Circuit has set out a framework for determining when harmless error analysis should be utilized. *See id.* at 453–54. In *Peck II*, the court distinguished between "structural" errors and trial errors, and found that while structural errors are not subject to harmless error review, trial errors are, *Id.* at 454. Structural errors are defined as fundamental defects in the trial mechanism that affect the entire "framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id.* at 454 (quoting *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). In determining whether an error is structural one must consider whether the error was of sufficient consequence that the criminal process " 'cannot reliably serve its function as a vehicle for determination of guilt or innocence.' " *Id.* Examples of structural errors include a total deprivation of the right to counsel at trial, or a trial presided over by a biased judge. *See Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). Another example is a jury instruction giving the wrong burden of proof. *See Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).

Considering this, the failure to give a jury instruction on the *Ratzlaf* element is not a structural error. The Second Circuit in *Peck II* is directly on point. In *Peck II,* the court concluded that the omission of the heightened scienter requirement subsequently imposed by *Ratzlaf* was a trial error. The court, citing *California v. Roy,* 519 U.S. 2.5, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996), reasoned that "the error at [the defendant's] trial is as easily characterized as a "misdescription of an element" of the crime, as an error of "omission" of a component of an element." *See Peck II,* 106 F.3d at 457. Since the instructional error in this case is a trial error, harmless error analysis applies.

In *Peck II,* the court stated that the applicable harmless error standard for collateral attacks such as the present case is whether the error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Id.* at 454 (citing *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). Furthermore, in determining whether the constitutional error substantially influenced the jury's decision, a reviewing court should grant relief if it is in "grave doubt as to the harmlessness" of a constitutional error. *See O'Neal v. McAninch,* 513 U.S. 432, 446–47, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995). A court is in "grave doubt" when "the matter is so evenly balanced that [the Judge] feels himself in virtual equipose as to the harmlessness of the error." *Id.* at 994. In applying this standard, the Court concludes that the instructional error in *Mickens* constituted harmless error.

At trial, there was substantial evidence to prove that Mickens acted with knowledge that his conduct was unlawful. Specifically, a review of the evidence indeed reveals that Mickens was fully aware of the federal law which requires banks and other financial institutions to file reports whenever they are involved in cash transactions that exceed $10,000. For instance, Mickens' knowledge is evidenced by his automobile and real property purchases, which included a Rolls Royce and a condominium in California. Testimony revealed that Mickens would pay for these purchases with a series of checks, money orders and cash, all under the sum of $10,000 in order to avoid the triggering of reporting requirements. Furthermore, a review of Mickens' bank records reveals a pattern of structuring. For instance, Mickens would often break up a deposit of more that $10,000 into two different deposits

with the purpose of avoiding the reporting requirements. Mickens' efforts to structure transactions in this manner point to the conclusion that he operated with the knowledge of federal reporting requirements. Consequently, the instructional error with respect to Mickens' knowledge of his unlawful acts constitutes harmless error.

### F. Jury Instruction as to the Tax Return Charge

■ Mickens next argues that the Court erred by not instructing the jury that they were to determine the materiality of the falsehoods in Mickens' tax returns. He relies on *United States v. Gaudin*, 515 U.S. 506, 521, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), where the court held that a defendant is deprived of his right to a jury verdict when the court determines one of the essential elements of the offense charged as a matter of law. This argument is without merit.

The Second Circuit decided the issue raised by Mickens in *United States v. Klausner*, 80 F.3d 55, 60 (2d Cir.1996). In *Klausner*, the defendant argued that in light of the *Gaudin* decision, the district court erred when it failed to submit the question of materiality of false itemized deductions to the jury. The Second Circuit disagreed, stating that "[w]hile the Supreme Court's determination of materiality required the resolution by the jury of 'subsidiary questions of purely historical fact,' the determination of materiality in the present case involved purely a question of law and was a suitable resolution for the court." *Id.* The court explained that the trial court was merely "stat[ing] the obvious fact that deductions affect the computation of tax liability" when it instructed the jury that deductions were material matters to the statute. *Id.* at 61 (citation omitted). Finally, the court concluded that because "materiality" in the statute in issue was defined as "essential to the accurate computation of the client's taxes," and any false deductions "necessarily resulted

in inaccurate computations of … taxable income," the determination of materiality was properly decided by the court as a matter of law. *Id.* at 60–61.

In this case, the Court instructed the jury that they were to decide whether Mickens did in fact make false statements as to his gross income and name. (Tr. at 8339.) The Court did not take this question away from the jury. Furthermore, since 26 U.S.C. § 63 states that an individual's taxable income is determined by the individual's gross income minus allowable deductions, the report of a false gross income and a false name would plainly result in inaccurate computations of Mickens' taxable income. Therefore, there was no error in the Court's instruction.

### G. Sentence Calculation

■ Mickens next argues that the Court erred in calculating his sentence. He contends that there was no evidence in the record from which the Court could conclude that he was part of a conspiracy to traffic in 50 kilograms or more of cocaine. This argument is also meritless.

■ The base offense level for a narcotics offense is calculated with reference to the quantity of narcotics involved, in accordance with the Drug Quantity Table ("Table") set forth in Guidelines § 2D1.1(c). However, in cases where the exact amount of drugs is uncertain, a judge may approximate the quantity attributed to a defendant. *See United States v. Jacobs*, 955 F.2d 7, 9 (2nd Cir. 1992). In *United States v. Jacobs*, the direct appeal of co-defendant in this case Anthony Jacobs, the Court of Appeals concluded that the Court's application of the Guidelines was procedurally proper. *Id.* The Court adopted a two-step method to compute Jacobs' offense level. First, the Court approximated the amount of cocaine distributed by the conspiracy and then attributed the full amount distributed by the conspiracy to Jacobs. Second, based on the amount of money that Mickens had spent during the duration of the conspira-

**338**

cy, the Court approximated that Mickens' organization had dealt over fifty kilograms of cocaine. Finally, the Court concluded that Jacobs' Guidelines range should be premised on this quantity. *Id.*

Although the Second Circuit reversed Jacobs' sentence, concluding that the weight of the narcotics should not have been attributed to Jacobs, the Court did affirm the District Court's two-step analysis as procedurally proper. *Id.* at 9–10. As the commentary to the Guidelines reveals " '[w]here ... the amount [of drugs] seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance.' " U.S.S.G. § 2D1.4, application note 2.[2] Furthermore, pursuant to Guidelines § 1B1.3. one convicted of a narcotics conspiracy may be sentenced on the basis of "conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3. application note 1; *see United States v. Schaper*, 903 F.2d 891, 897–99 (2d Cir. 1990); *United States v. Candito*, 892 F.2d 182, 185 (2d Cir.1989).

As applied to Mickens, attribution of the full approximated amount of cocaine distributed by the conspiracy was proper. Based on the amount of money that Mickens had spent during the duration of the conspiracy, there was ample basis for the Court to conclude by a preponderance of the evidence that Mickens' organization had dealt over fifty kilograms of cocaine worth $1,885,000 in profits. Accordingly this argument fails.

2. Moreover, the Supreme Court has effectively overruled *United States v. Jacobs, supra,* in *United States v. Watts,* 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) ("[w]e ... hold that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence"). It follows that where a court may consider evidence of crimes of which a defendant was acquitted, it

**CONCLUSION**

For the foregoing reasons (including those stated supra at 330, fn. 1), Mickens' Motion to Vacate his sentence pursuant to 28 U.S.C. § 2255 must be, and is hereby, DENIED in its entirety.

SO ORDERED.

would certainly be justifiable for this Court to have considered (which it did) the conduct suggested by the numerous counts naming Jacobs among other defendants, and by the evidence supporting those counts which was adduced in four months of trial, and which showed that the conspiracy in which Mickens and Jacobs were 'partners' generated $1,885,-000 in profits from the sale of fifty kilograms of cocaine.