**Thomas MICKENS, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. CV–97–2122.**

United States District Court, E.D. New York.

Aug. 25, 2004.

Robert N. Isseks, Middletown, NY, Merrill N. Rubin, Law Office of Merrill Rubin, LLC, New York, NY, for Plaintiff.

Cecil Carusi Scott, Brooklyn, NY, for Defendant.

### MEMORANDUM AND ORDER

PLATT, District Judge.

Petitioner Thomas Mickens moves under Federal Rule of Civil Procedure 60 for

relief from his conviction and sentence. For the following reasons, Mickens is **GRANTED** an evidentiary hearing pursuant to Rule 60.

## Background

As this Court stated in an earlier proceeding, "Mickens orchestrated a profitable cocaine distribution network in Queens, New York over a five-year period," an activity that allowed him to engage "in a lifestyle of extravagant spending." *Mickens v. United States*, 53 F.Supp.2d 326, 329 (E.D.N.Y.1999). In 1989, a jury found Mickens guilty on seventeen counts of tax evasion, the filing of perjurious tax returns, money laundering, and the illegal structuring of transactions in relation to conspiracies to distribute and possess cocaine and to defraud the United States. See *id.* Upon conviction, Mickens received a sentence of 35 years imprisonment and a $1,000,000 fine. *See id.* His conviction was upheld upon direct appeal. *United States v. Mickens*, 926 F.2d 1323 (2d Cir.1991), *cert. denied*, 502 U.S. 1060, 112 S.Ct. 940, 117 L.Ed.2d 111 (1992). This Court also rejected *habeas corpus* challenges to Mickens' sentence, and declined to grant him a certificate of appealability in 1999. The Court of Appeals denied his application for such a certificate in 2000.

The basis of his current motion, also set forth in an earlier Section 2255 petition, is the claim that Robert M. Simels, Esq., failed to communicate to Mickens a plea bargain offer. Assistant United States Attorney Kirby A. Heller allegedly extended this offer to Mr. Simels in a conversation of October 27, 1988, memorialized in letter dated October 28, 1988. Mickens' five co-defendants received the plea bargain offers communicated in the same letter. But Mr. Simels, lead counsel for the defense, maintained that no such offer was made by the Government to Mickens.

AUSA Heller stated that she "probably" made a plea offer to Mickens, as offers had been extended to his co-defendants, and accepted by at least one of them. But a subsequent search of her records revealed no such offer to Mickens. A further, unsuccessful search by AUSA Stuart M. Altman resulted in his stating in 1999 that "despite an extensive review of files by the undersigned, no plea offer to Mickens has been found in the Government's files," and that there was "no merit" in Mickens' claim that a plea offer had been made but not communicated to him. Petitioner's Memorandum of Law at 3–4; Government's Memorandum of Law at 3–5.

After submitting multiple Freedom of Information Act ["FOIA"] requests over a period of years, on November 13, 2002 Mickens obtained what appears to be a true copy of a letter from AUSA Heller to Mr. Simels that "formalize[d] the plea offer communicated on October 27, 1988 to Robert Simels as lead counsel." [Hereinafter, "the Memorandum."] The Memorandum, docketed with the clerk of the court the next day, pertained to "all defendants" in the case of *United States v. Mickens, et al.*, and offered Mickens a plea to an unspecified "Count 5" in satisfaction of his indictment. Mickens claims, although the original accusatory instruments are lost, that the fifth count was a money laundering charge. The Government does not dispute the authenticity of the Memorandum. Petitioner's Memorandum at 5; the Government's Memorandum, *passim*; *see also* the Memorandum, attached as Exhibit A.

The Court, however, questions the proposition that the Government offered that Mickens be allowed to plead only to one count containing only a money laundering charge.

An examination of the Court's copy of Mickens' Pre–Sentence Report ["PSR"] does not reveal what "Count 5" may have been, because Mickens' appears to have been acquitted on this particular count at trial (and therefore it did not factor into the computation of his sentence). However, the Court's recollection is that the second Defendant in this case, the "Number Two" man in the conspiracy, Anthony Jacobs, was required to plead guilty to drug and tax evasion conspiracy charges, and a drug possession charge on a small quantity of cocaine. The Court sentenced Jacobs to 27 years' imprisonment, taking into account all of the substantive counts in the indictment against him.[1] Jacobs' initial sentence of 27 years, subsequent to his plea, leads the Court to question whether his co-defendant, Mickens, was offered a plea to an offense for which he would have received a substantially lesser penalty than the sentences that either he or Jacobs actually received.

Be that as it may, Mickens received a sentence, after being found guilty at trial on 17 counts, of only 35 years of imprisonment and a $1,000,000 fine. The maximum statutory sentence for a single count of money laundering under 18 U.S.C. § 1956 is 20 years of imprisonment and a $500,000 fine—which was less than the sentence that Jacobs received originally. Nonetheless, assuming, as we must at the moment, a difference of 15 years in prison and a half-million dollars in fines between the sentence meted out after trial and the maximum sentence called for under the putatively offered plea agreement,[2] both the prejudice to Mickens, and the inference of ineffective assistance of counsel on the part Mr. Simels in not communicating that offer to Mickens, may be material. *See Pham v. United States*, 317 F.3d 178, 182 (2d Cir.2003) (stating that a "defendant suffers a Sixth Amendment injury where his attorney fails to convey a plea offer," *citing Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

Mickens seeks a fresh review of his conviction and sentence by means of a Rule 60 motion. The parties finished exchanging memoranda of law on June 4, 2004. This decision follows.

### Standards of Review

The parties substantively agree that Mickens' challenges to his conviction and sentence must be re-examined in light of the Memorandum, which suggests that Mickens received ineffective assistance from Mr. Simels, who may have failed in his duty to relay a plea offer to his client. The parties, however, disagree as to the proper procedure by which to proceed.

Mickens first proposes that the Court vacate his conviction and sentence under Federal Rule of Civil Procedure 60(b)(2), which states that "upon such terms as are just," a court may relieve a party from a judgment for the reason of "newly discovered evidence which by due diligence could

---

1. The Court of Appeals twice vacated Jacobs' sentence, on the grounds that it was improper to consider all of the substantive counts in the indictment, see *U.S. v. Mickens, et al.*, 926 F.2d 1323, 1331–32 (2d Cir.1991), and *United States v. Jacobs*, 955 F.2d 7, 8–10 (2d Cir. 1992), but the United States Supreme Court found shortly thereafter, but in a decision that was not retrospectively applicable to Jacobs' case, that such a procedure had not been improper.

2. This calculation posits that Mickens would have either pleaded to a single count of money laundering, or that the Government would have agreed that the sentences on any multiple money laundering convictions might run concurrently. It is not unreasonable to assume that Mickens might have received a reduction in his sentence for pleading guilty.

not have been discovered in time to move for a new trial" (which is within 10 days of the entry of judgment, according to Rule 59), or Rule 60(b)(6), which provides such a remedy for "any other reasons justifying relief" from the judgment. Rule 60 provides that such motions "shall be made within a reasonable time" of "not more than one year after" the entry of judgment.

Alternatively, Mickens proposes, under Local Civil Rule 6.3, that the Court reconsider its 1999 Orders denying his earlier petitions for Section 2255 relief and his application for a certificate of appealability of those decisions. Rule 6.3 provides that such a motion be filed within 10 days of the entry of an order or judgment.

The Government proposes yet a third way to proceed, via 28 U.S.C. § 2244. This statute permits successive *habeas corpus* applications presenting a claim not made in a prior application where

> the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2)(B)(i)-(ii).

## Discussion

None of the three avenues pointed out by the parties offers, in the Court's view, a wholly appropriate route to reach Mickens' claim. Each suggestion has its drawbacks.

Rule 60 motions are to be made not more than one year after a judgment, and Local Rule 6.3 motions are to be made within 10 days after a judgment. Mickens was convicted and sentenced 15 years ago,

and his Section 2255 petitions were denied 5 years ago. Section 2244 pertains to the appeal of State court convictions, and also to the discovery of facts that would show that the petitioner is not guilty of the underlying offense. Mickens was convicted in federal court, and there is no evidence that he is not guilty of the underlying offenses.

Still, as the gravamen of Mickens' petitions is that he was denied procedural due process in 1988 and 1989, and as documentary evidence has materialized demonstrating that this may well be the case, it might be said to be unreasonable to allow the lack of an ideal procedural remedy for Mickens' situation to prevent his claim from being addressed in 2004. Absolute rules serve certain useful purposes. But this particular instance may call for an exception to such rules, lest Mickens be caught in a procedural Catch–22 that prevents his claim from being heard, despite the discovery of new evidence, the existence of which was previously denied by the Government. Therefore, the Court will proceed under Rule 60, beginning with an evidentiary hearing, at which sworn testimony may be taken from AUSA Heller, Mr. Simels and Mickens, to determine what transpired.

### A. *Rule 60*

The Government objects to taking this path. The Government argues that (i) the circumstances of this case are neither extraordinary nor present extreme hardship, (ii) Mickens' motion does not attack the integrity of his Section 2255 proceeding, (iii) Mickens' "own failings produced" any miscarriage in the *habeas* proceeding, (iv) Mickens' motion is untimely, and (v) the Government will suffer prejudice if Mickens' motion is granted. The Government cites for its opposition to the use of Rule 60 in this case the decision of the Court of

Appeals in *Harris v. United States*, 367 F.3d 74 (2d Cir.2004). *See* the Government's Memorandum at 6–16.

The Court finds it difficult to disagree with the Government's position.

██ However, first, the undersigned is disturbed that the Government finds it, by definition, "ordinary" that it might have denied, over a period of years, the existence of a key document in a Section 2255 proceeding. The Court certainly *hopes* that this may be an extraordinary occurrence. Further, the possible hardship to Mickens is suggested by the fact that he is serving a 35–year sentence imposed subsequent to conviction at trial, when he would, if he had accepted the claimed plea offer, have received a sentence of no more—and possibly less than—20 years pursuant to the allegedly offered plea to a charge of money laundering.

Second, the Government argues that Mickens' motion does not attack the integrity of his Section 2255 proceeding. Mickens' motion does exactly that, and the Government's reliance on *Harris* is therefore wholly misplaced. *Harris* reiterates "that relief under Rule 60(b) is available for a previous *habeas* proceeding only when the Rule 60(b) motion attacks the integrity of the previous *habeas* proceeding rather than the underlying criminal conviction." *Id.* at 77.[3] The reason Mickens' present motion properly attacks the integrity of his Section 2255 proceeding is that the Government, in the *habeas* proceedings decided in 1999 and 2000, incorrectly represented through AUSA Altman that no record of a plea offer to Mickens existed. Such a record *did* exist, and as a result, through the extraordinary circumstance of Government error and misstatement, this pro-

ceeding may have lacked full integrity. Mickens' motion does not attack the integrity of his conviction. However, as indicated *supra* at 5 and as will be discussed *infra* at 12–15, the effect upon Mickens' conviction, if it is determined that his counsel failed to relay a plea offer, is clear.

Third, the Government argues that Mickens should be penalized for failing to obtain the Memorandum sooner: Mickens' "omission to pursue this obvious avenue [of the Court's warehoused storage files, via an entry on the docket sheet] until more than four years after the proceeding came to and end should not be excused, and his attempt to characterize these circumstances as 'extraordinary' and 'a hardship' warranting Rule 60(b)(6) relief should be rejected." The Government's Memorandum at 12–13. The undersigned does not impute any ill intent to the Government. But it would behoove its representatives, after the Government stated to the Court that it could not find the sought-after document, to refrain from criticizing as tardy the efforts Mickens exerted, from behind bars, to obtain the same Memorandum. The Government, with its vastly greater resources, failed to obtain the document *at all.*

Fourth, the Government argues that Mickens' motion is untimely. Mickens' successive FOIA requests finally obtained the October 27, 1988 Memorandum on November 13, 2002. Mickens then obtained competent counsel, who submitted the instant motion on September 9, 2003. Contrary to the Government's assertions, the relevant time reference is obviously the discovery of the Memorandum in 2002, and not the denial of Mickens' Section 2255

---

**3.** The Government shoehorns Mickens' motion into Rule 60(b)(6). Mickens' motion also suggests, and the Court finds to be more apposite, Rule 60(b)(2), pertaining specifically to newly-discovered evidence. *Cf. Harris* at 80, stating that it "is undisputed that none of the first five subsections [of Rule 60(b) ] applies here."

petition in 1999 (much less, as is also suggested, his judgment of conviction in 1989). Given the difficulties inherent in finding a good attorney willing to undertake such a case, this delay of less than ten months is not unreasonable. It should not and will not be a bar to the consideration of Mickens' motion.

Fifth and last, the Government argues that it has been prejudiced by the passage of time, and the disorganization of its own files, in preparing its opposing Mickens'. motion. So be it. The Government's *cri de coeur* is that "most of the Government's files pertaining to the Section 2255 proceeding are no longer available, and the court file appears to be missing as well. Most of the government's files for the criminal matter are also lost and we have been unable so far to obtain the court file for that case *or even the Pre–Sentence Report.*" Government's Memorandum at 15–16 (emphasis supplied). This argument, at least in small part, falls on deaf ears. Immediately upon reading that passage in the Government's brief, Mickens' PSR was easily located by the undersigned in his chambers. Such a simple oversight frankly calls into question the thoroughness and vigor with which the Government searched for the other "lost" files.

The Government's arguments are not enough to preclude a hearing. As indicated above, the Court agrees with the Government that from a strictly legal standpoint, Mickens' present motion may be time-barred. Nonetheless, in order to make a complete record, the Court will grant Mickens' motion to the extent of granting an evidentiary hearing to develop what appear to be some of the missing facts.

B. *Ineffective assistance of counsel*

Having decided upon the least-worst procedural vehicle by which to reach the merits of Mickens' claim, the Court now turns to consider, briefly and while reserving its ultimate decision, the substance of his petition. Despite the earlier denials of Mr. Simels and AUSAs Heller and Altman, the record now suggests that the Government extended a plea offer to Mr. Simels and his client, both verbally and in writing, on or about October 27, 1988.

There is no suggestion that the Memorandum is a questioned document. And neither is it alleged that the Government, in the persons of either AUSAs Heller or Altman, made intentional misrepresentations to the Court or to Mickens. It simply took years of searching by the Government, pursuant to FOIA requests by Mickens, to produce the sought-after evidence from the Augean stables of the Government's and the court systems' files.

■ Mr. Simels, despite having been informed of this recent development (*see* the Government's Memorandum at 2 n. 1), has not withdrawn his earlier insistence, as set forth during Mickens' earlier Section 2255 proceedings, that the Government offered no plea bargain to his client. And, as Mr. Simels is accused of offering ineffective assistance to Mickens, he is no longer bound by the attorney-client privilege to remain silent. *See, e.g., Louima v. City of New York,* No. 98–CV–5083, 2004 U.S. Dist. LEXIS 13707 at *216–218 (E.D.N.Y. July 21, 2004) (citing New York Code of Professional Responsibility Disciplinary Rule 4–101(C)(4), which authorizes an attorney to reveal "confidences or secrets necessary to ... defend the lawyer ... against an accusation of wrongful conduct," such as "where his competence is challenged by his client as in a claim of ineffective assistance of counsel by a convicted criminal defendant"). Even if Mr. Simels did in fact relay the Government's offer, he has not admitted to having done so.

This being the case, nonetheless it boggles the mind to suggest that plea offers were extended to Mickens' five co-Defendants, but that none of these Defendants ever communicated this fact to Mickens, and that these Defendants' lawyers also never mentioned this development to their lead counsel, Mr. Simels. (The Memorandum set forth specific plea offers to all six co-defendants.) It beggars belief that Mr. Simels proceeded to trial blithely unaware of the Government's offers to Mickens' co-defendants and his client. It is incredible to think that such circumstances took place, and the Court declines any invitation to suspend reality and do so.

 Therefore the Court thinks that there may be a basis to believe, in view of the Memorandum, that the Government offered Mickens a plea bargain, but that Mr. Simels, for whatever reason, may not have relayed that offer to Mickens. A criminal defense attorney is under an absolute duty to relay any plea offers to his client. Not to do so is professional misconduct. See the American Bar Association's Model Code of Professional Responsibility's Ethical Consideration 7–7 (stating that a "defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable"). The failure to communicate a plea offer is a fundamental violation of the Sixth Amendment right to the effective assistance of counsel, and the failure to receive the effective assistance of counsel at the crucial plea-bargaining stage of a case may give rise to the necessity of vacating a subsequent judgment of conviction. *Pham v. United States*, 317 F.3d 178, 182 (2d Cir.2003); *Boria v. Keane*, 99 F.3d 492, 496–97 (1996). The Court will hold a hearing to obtain a sworn, factual record to establish, if possible, the facts in this case, after which time it will reach a decision on the merits of Mickens' motion.

### Conclusion

The Court reserves judgment on the final disposition of Mickens' motion under Federal Rule of Civil Procedure 60 to vacate his judgment of conviction and his sentence. But Mickens is **GRANTED** an evidentiary hearing in this matter. This hearing will endeavor to determine whether Mickens received ineffective assistance of counsel from Mr. Simels at the plea-bargaining stage of his case, if and when his attorney failed in his duty to communicate to his client a plea offer extended by the Government.

**SO ORDERED.**